# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2525

_____

Pe Paul Goromou

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

No. 12-3612

_____

Pe Paul Goromou

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 15, 2013
Filed: July 22, 2013
_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Pe Paul Goromou petitions for review of the decision of the Board of Immigration Appeals (BIA) denying his claim for asylum based on the untimeliness of his application. Because we lack jurisdiction to review the BIA's determination that Goromou's application for asylum was untimely, we dismiss the petition.

## I. *Background*

Goromou is a native and citizen of Guinea who was admitted to the United States on December 1, 2005, as a nonimmigrant government official with authorization to remain in the United States until July 19, 2006. Goromou, who served in the Guinean armed forces, entered the United States in December 2005 to attend two trainings with the United States Coast Guard in Connecticut, with the last training scheduled to end on July 19, 2006. The Invitational Travel Order issued to Goromou provided that the "United States may cancel training and return to country [invitees] who violate US law or MILDEP[1] regulations or who are found otherwise unsatisfactory." On May 19, 2006, the United States Coast Guard Academy dismissed Goromou for academic and military aptitude deficiencies. Although Goromou was ordered to depart the United States on May 22, 2006, and flight arrangements were

_____

[1]MILDEP stands for "Military Department." *See, e.g.*, Major Robert F. Stamps, USAFR, *Air Force Foreign Military Sales: An Overview*, 37 A.F. L. Rev. 211, 214 (1994).

made for him, Goromou instead moved to Minnesota. Goromou remained in the United States beyond July 19, 2006.

On January 3, 2007, Goromou filed for asylum, but his application was rejected due to a deficiency. Goromou cured the deficiency and refiled his asylum application on January 16, 2007. The Department of Homeland Security (DHS) referred the application to the immigration judge (IJ). DHS commenced removal proceedings against Goromou by filing a "Notice to Appear" (NTA) on July 10, 2008, charging Goromou with being removable pursuant to 8 U.S.C. § 1227(a)(1)(B)—an alien who has overstayed his visa. Through counsel, Goromou conceded to proper service of the NTA, admitted to all of the factual allegations contained in the NTA, and conceded the charge of removability. Goromou renewed his requests for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) before the IJ.

## A. *IJ's May 6, 2010 Decision*

Before the IJ, Goromou claimed to have suffered persecution in the past based on his ethnicity, religion, political opinion, or imputed political opinion. According to Goromou, he had suffered discrimination in the Guinean military because he is a Christian and is from the Guerze ethnic group from the forest region of Guinea. He also alleged that he suffered past persecution based on his belief in human rights and the rule of law, resulting in his perceived image as an anti-government instigator. According to Goromou, the "gendarmes"—military police officers[2]—imprisoned and tortured him for five to six days in 1996 because they believed that he was part of an attempted coup d'etat. He alleged a fear of future persecution based on information he received that his name was placed on a "blacklist" as a suspected dissident attempting to overthrow the government.

---

[2]*See Diallo v. Holder*, 422 F. App'x 47, 48 (2d Cir. 2011) (unpublished summary order).

-3-

Goromou began attending the United States Coast Guard Academy on March 15, 2006. Goromou testified that he learned that he had been blacklisted in Guinea shortly thereafter when he called his wife and she told him about the list. Goromou began fearing return to Guinea at this point. He testified that following the telephone call, he "couldn't concentrate." He "got sick" and "was completely disoriented." His performance in the training program suffered as a result, and, on May 22, 2006, the United States Coast Guard ordered Goromou to return to Guinea, although he did not depart as ordered. Instead, he relocated to Minnesota, where he had personal ties. Despite these ties, Goromou often felt isolated and depressed.

Goromou soon began receiving letters from family members and former colleagues in Guinea regarding the danger that he faced back home. On November 26, 2006, he received a letter from his wife informing him that five military men came to their house in Guinea, seeking Goromou. The men searched the home. According to the letter, a few days later, Goromou's children went missing.[3] The letter also stated that two of his friends in the military had been arrested and were in prison. A December 20, 2006 letter from Goromou's nephew confirmed the information in Goromou's wife's letter.

In his January 3, 2007 asylum application, Goromou explained why he did not file his asylum application within the first year after his arrival, stating, in relevant part:

> It was only . . . after I received the letter from my wife in the fall of 2006 that I knew I could not return to Guinea as my wife informed me in the letter that police had come to our house to look for me, that our children

---

[3]Goromou's wife wrote the letter on October 10, 2006, but she did not mail the letter until November 17, 2006. By the time that the letter was mailed, the children had returned home safely, as the military only detained the children for one night and questioned them about their father's whereabouts before releasing them.

were missing and that two of my friends had just been arrested. Soon after receiving my wife's letter I met a person who explained to me that I needed to apply for asylum.

In her May 6, 2010 decision, after finding Goromou "generally credible," the IJ analyzed Goromou's eligibility for asylum. The IJ noted that an "alien [must] demonstrate 'by clear and convincing evidence that the [asylum] application has been filed within 1 year after the date of the alien's arrival in the United States.'" (Quoting 8 U.S.C. § 1158(a)(2)(B).) However,

> [a]n application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of *changed circumstances which materially affect* the applicant's eligibility for asylum or *extraordinary circumstances* relating to the delay in filing an application within the period specified in [§ 1158(a)(2)(B)].

8 U.S.C. § 1158(a)(2)(D) (emphases added).

The IJ concluded that Goromou did not qualify for either exception to the one-year filing deadline. "The term 'extraordinary circumstances' . . . refer[s] to events or factors directly related to the failure to meet the 1-year deadline. Such circumstances may excuse the failure to file within the 1-year period as long as the alien filed the application within a reasonable period given those circumstances." 8 C.F.R. § 208.4(a)(5). "Serious illness or mental or physical disability, including any effects of persecution or violent harm suffered in the past, during the 1-year period after arrival" constitute "extraordinary circumstances." *Id*. at § 208.4(a)(5)(i). As to the extraordinary-circumstances exception, Goromou asserted that he filed his asylum application within a reasonable time after his non-immigration visa expired and while he was battling depression and isolation. According to Goromou, he first learned

about asylum after meeting a Guinean man, Mamady Kaba, in the fall of 2006 who observed Goromou's depression and suggested that he seek asylum.

The IJ found that Goromou did not qualify for the extraordinary-circumstances exception, explaining:

> Although [Goromou] alleges that he was depressed and this kept him from filing, he has not provided documentation of his depression aside from a letter written by Mamady Kaba, a friend of [Goromou], who states that [Goromou] was depressed when he met him, and a report from the Center for Victims of Torture diagnosing [Goromou] with Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder on April 26, 2007. (Ex. Ex. 14; 15 at 101). There is no documentation of depression, isolation, or PTSD for the period between [Goromou's] last entry to the United States and the filing of his asylum application. Therefore, the Court does not find that depression, isolation or PTSD resulted in [Goromou's] failure to apply for asylum within one year of his entry.
>
> [Goromou's] nonimmigrant status ended when he was dismissed from his training program and ordered to return to Guinea, and not when the program officially ended. [Goromou] did not file for asylum until January 3, 2007. (Ex. 15 at 337–38). Then his application was rejected and re-filed on January 16, 2007, which was almost eight months after he violated his nonimmigrant status and a little over two years after he entered the United States.[4] Therefore, the Court does not find that [Goromou] filed within a reasonable time after the end of his legal status in the United States.

As to the changed-circumstances exception, the regulations provide that "changed circumstances" "include . . . [c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable

---

[4]The IJ's finding that Goromou filed his application approximately two years after his last entry into the United States was erroneous.

U.S. law and activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk." 8 C.F.R. § 208.4(a)(4)(i)(B). The alien must "file an asylum application within a reasonable period given those 'changed circumstances.'" *Id.* § 208.4(a)(4)(ii). Goromou "argue[d] that he filed within a reasonable time after learning that he had been blacklisted in Guinea and that the military was looking for him and harassing his family."

Although the IJ found that Goromou "established that changed circumstances existed when he learned that his name was on a blacklist in the spring of 2006, some time after March 15, 2006," it concluded that Goromou failed to "establish[ ] that he filed his application for asylum within a reasonable time of learning about the changed circumstances," explaining that Goromou

> testified that he called his wife sometime after March 15, 2006, and before May 22, 2006. It was during this conversation that [Goromou] learned that his name was on a blacklist in Guinea. [Goromou] testified that when he left the Coast Guard training on May 22, 2006, he knew that he could not return to Guinea, so he moved to Minnesota. [Goromou] did not file for asylum until January 3, 2007. (Ex. 15 at 337–38). His application was rejected and was not re-filed until January 16, 2007. Thus, [Goromou] waited approximately nine months to file his asylum application. The Court does not believe that applying for asylum nine months after learning of changed circumstances is within a reasonable amount of time. *See* 8 C.F.R. § 1208.4(a)(4).

> The Court does not find that [Goromou] established that changed circumstances existed when he received the letter from his wife on approximately November 26, 2006. [Goromou] claims that he feared returning to Guinea when he spoke to his wife sometime after March 15, 2006, and that is why he did not perform well in the Coast Guard training. He then decided to move to Minnesota rather than return to Guinea when the Coast Guard dismissed him from training. [Goromou] testified that when he left the Coast Guard training, that he decided that he could not go back to Guinea. [Goromou] now argues that he did not

-7-

feel that he could not return to Guinea until he received a letter from his wife on approximately November 26, 2006, that again stated that he was on a blacklist, the government was harassing the family, and two of his friends were in prison. The Court finds that [Goromou] has not established changed circumstances as his testimony reveals that both his original claim of fear in spring 2006 and his alleged new fear in November 2006 are on account of the same ground and from the same persecutors. The information contained in the letter from [Goromou's] wife did not materially affect [Goromou's] eligibility for asylum. Therefore, the Court finds that [Goromou] is not eligible for asylum as he did not apply within one year of arriving in the United States, and does not qualify for an exception to the one year filing deadline.

Although the IJ found Goromou ineligible for asylum, she granted him withholding of removal.[5] Because the IJ granted Goromou's application for withholding of removal, she did not address whether Goromou was entitled to CAT relief.

## B. *IJ's June 2, 2010 Order on Motion for Reconsideration*

Goromou filed a motion for reconsideration, arguing that the IJ erroneously found him ineligible for asylum. Goromou's motion made two arguments. First, Goromou argued that the IJ erred as a matter of fact in finding that he missed the one-year filing deadline by a little over two years instead of six weeks. The IJ found that Goromou was correct and that she had erred in calculating the time between the one-year deadline and his filing date. According to the IJ, Goromou entered the United States on December 1, 2005, and attempted to file for asylum on January 3, 2007,

---

[5]"Unlike an application for asylum . . . a grant of an alien's application for withholding is not a basis for adjustment to legal permanent resident status . . . , and [the relief] only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country." *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003), *abrogated on other grounds by Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Thus, the IJ "ORDERED that [Goromou] be removed from the United States to any country other than Guinea that will accept him."

although he had to re-file after the application was rejected. If January 3, 2007, is considered as the filing date, the IJ found that Goromou filed for asylum approximately 33 days after the one-year filing deadline. If January 16, 2007, is considered as the filing date, the IJ found that Goromou filed for asylum approximately 46 days after the one-year filing deadline. Therefore, regardless of which date the IJ used, Goromou filed after the one-year filing deadline.

Second, Goromou asserted that the IJ erred as a matter of law in concluding that he did not file for asylum within a reasonable time after his non-immigrant status ended and when it concluded that he failed to establish exceptional circumstances. The court summarily rejected Goromou's argument.

## C. *BIA's Decision*

Goromou appealed the IJ's denial of his asylum application on the ground that he failed to present changed or extraordinary circumstances to justify missing the one-year filing deadline. On May 30, 2012, the BIA dismissed Goromou's appeals of the IJ's May 6, 2010 decision and her June 2, 2010 decision.

First, the BIA "agree[d] with the Immigration Judge that any changed circumstances materially affecting [Goromou's] asylum claim and excusing his late filed asylum application ar[o]se from the telephone call from his spouse in the Spring of 2006 rather than the letter of November 2006." After "agree[ing] [with the IJ that] there were changed circumstances of which [Goromou] was aware from the time he received the telephone call in the Spring of 2006," the BIA addressed "whether [Goromou] filed his asylum application within a reasonable time from this change." The BIA "agree[d] with the Immigration Judge that [Goromou's] delay was not reasonable," stating:

> *As discussed more fully below concerning the argued extraordinary circumstances* presented by [Goromou], the mental problems or isolation

[Goromou] faced were not significantly different from others seeking asylum in the United States. From Spring of 2006, he was on notice of possible persecution in Guinea and he was under military orders to return there, but he did not file his asylum application until January 2007. We agree with the Immigration Judge that under the particular circumstances of this case, the delay in filing after the discovery of the changed circumstances was not reasonable. *See Matter of T-M-H- & S-W-C-*, [25 I & N Dec. 193 (BIA 2010)].

(Emphasis added.)

Second, the BIA "also agree[d] that [Goromou] has not presented extraordinary circumstances to allow his late filed application for asylum." Specifically, the BIA "agree[d] with the Immigration Judge that from May 22, 2006, [Goromou] was on notice that he was required to leave the United States or file an asylum application." The BIA noted that Goromou delayed filing his asylum application "over 5 months from the July 19, 2006, expiration of his status, but over 7 months from the military's termination of his participation in the program and his delivery to the airport for his departure from the United States." Based on the length of the delay, the BIA concluded that "the delay was not reasonable." The BIA also "disagree[d]" with Goromou's argument "that he was suffering from mental incapacity and isolation and that this also presents extraordinary circumstances which delayed his filing." The BIA "agree[d] with the Immigration Judge that [Goromou's] health and isolation issues do not present extraordinary circumstances for his failure to file his asylum application in a timely manner."

In addition to dismissing the appeals of the IJ's decisions, the BIA remanded the case to the IJ, pursuant to 8 C.F.R. § 1003.1(d)(6), "for the purpose of allowing the Department of Homeland Security the opportunity to complete or update identity, law enforcement, or security investigations or examinations, and further proceedings, if necessary, and for the entry of an order as provided by 8 C.F.R. § 1003.47(h)."

Following remand to the IJ, the IJ reissued her prior decision on October 1, 2012, granting Goromou withholding of removal but denying asylum.

## II. *Discussion*

Goromou petitions this court for review of the BIA's decision, arguing that the BIA "committed two legal errors in denying [his] asylum application as untimely filed."[6]

---

[6]Goromou originally filed a petition for review from the BIA's May 2012 order. *See Goromou v. Holder*, Docket No. 12-2525. On August 7, 2012, the government moved to dismiss the petition, arguing that since proceedings remained pending before the agency—the BIA had remanded to the IJ for administrative purposes—the BIA's order was not a final order as required to provide the Eighth Circuit with jurisdiction under 8 U.S.C. § 1252(a)(1). On remand, on October 1, 2012, the IJ again granted Goromou's application for withholding of removal but denied asylum. Goromou filed a second petition for review from this decision. *See Goromou v. Holder*, Docket No. 12-3612. All parties agree that this second petition for review is procedurally proper.

The government argues that this court lacks jurisdiction over the petition for review in Docket No. 12-2525 because the May 2012 order is a non-final order for purposes of judicial review. According to the government, the IJ's October 1, 2012 order is the "final agency order." *See* 8 U.S.C. § 1101(a)(47)(B) (stating that an order of removal becomes final 'upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period" for appeal). The government asks this court to dismiss Docket No. 12-2525 because it was premature and proceed solely on Docket No. 12-3612. We agree with the government that the October 1, 2012 order is the "final agency order" and therefore dismiss the petition for review in Docket No. 12-2525 for lack of jurisdiction.

But we also agree with the government that our dismissal of Docket No. 12-2525 does "not affect which order(s) are at issue in this case. That is, although Goromou's first attempt to seek review of the Board's May 30, 2012, order was premature, that order had become final by the time he filed his second petition for review."

-11-

> Congress has generally precluded the federal courts from exercising jurisdiction to review a determination of the Attorney General that an application for asylum was untimely. *See* 8 U.S.C. § 1158(a)(3). Accordingly, the Government contends that we lack jurisdiction to review the BIA's determination that [Goromou] was statutorily ineligible for asylum because [he] did not file h[is] application within either one year after h[is] arrival in the United States or a reasonable time after the onset of any changed or extraordinary circumstances. There is, however, a limited exception to the jurisdictional bar established in § 1158(a)(3). Namely, 8 U.S.C. § 1252(a)(2)(D), enacted as part of the REAL ID Act of 2005, provides that § 1158(a)(3) shall not "be construed as precluding review of *constitutional claims* or *questions of law* raised upon a petition for review filed with an appropriate court of appeals." (Emphasis added.) We must, therefore, examine "the nature of the argument advanced in the petition to determine whether an alien is raising a constitutional claim or question of law, over which we have jurisdiction, or asserting a dispute with the BIA's factual findings or discretionary judgments, which are insulated from judicial review." *Purwantono v. Gonzales*, 498 F.3d 822, 824 (8th Cir. 2007).

*Manani v. Filip*, 552 F.3d 894, 899–900 (8th Cir. 2009).

### A. *Conflation of Changed-Circumstances and Exceptional-Circumstances Exceptions*

According to Goromou, "[i]n determining that [he] had not filed his application within a reasonable time after the *changed circumstance*, the BIA held that because [his] PTSD and depression were not *extraordinary circumstances* his delay after *changed circumstances* was unreasonable." (Emphases added.) Goromou thus avers that the BIA conflated the changed-circumstances analysis and the extraordinary-circumstances analysis, which are used to evaluate whether a delay in filing for asylum is excusable. Goromou contends that the BIA legally erred because "8 U.S.C.

§ 1158(a)(2)(D) creates two separate exceptions to the one[-]year deadline—changed circumstances and extraordinary circumstances—and an applicant must only establish *one* to excuse an untimely application." (Emphasis added.) Goromou argues that he "is not asking this [c]ourt to reevaluate whether his seven[-]to[-]eight month delay in applying for asylum after the call with his wife was reasonable"; instead, he asserts that he "is requesting that this [c]ourt remand his case to the Board for it to assess the reasonableness of his delay without also requiring him to show that the cause for that delay was extraordinary."

"Any alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with [8 U.S.C. § 1158] . . . ." 8 U.S.C. § 1158(a)(1). But the alien must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." *Id*. § 1158(a)(2)(B). Notwithstanding the one-year filing deadline,

> [a]n application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General *either* the existence of changed circumstances which materially affect the applicant's eligibility for asylum *or* extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

*Id*. § 1158(a)(2)(D) (emphases added).

The regulations to § 1158(a)(2)(D) provide:

> (4) Changed circumstances.

> (i) The term "changed circumstances" in section 208(a)(2)(D) of the Act shall refer to circumstances materially affecting the applicant's eligibility for asylum. They may include, but are not limited to:

-13-

* * *

(B) Changes in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law and activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk . . . .

* * *

(ii) *The applicant shall file an asylum application within a reasonable period given those "changed circumstances*." If the applicant can establish that he or she did not become aware of the changed circumstances until after they occurred, such delayed awareness shall be taken into account in determining what constitutes a "reasonable period."

(5) The term "extraordinary circumstances" in section 208(a)(2)(D) of the Act shall refer to events or factors directly related to the failure to meet the 1-year deadline. Such circumstances may excuse the failure to file within the 1-year period *as long as the alien filed the application within a reasonable period given those circumstances*. The burden of proof is on the applicant to establish to the satisfaction of the asylum officer, the immigration judge, or the Board of Immigration Appeals that the circumstances were not intentionally created by the alien through his or her own action or inaction, that those circumstances were directly related to the alien's failure to file the application within the 1-year period, and that the delay was reasonable under the circumstances. Those circumstances may include but are not limited to:

(i) Serious illness or mental or physical disability, including any effects of persecution or violent harm suffered in the past, during the 1-year period after arrival . . . .

8 C.F.R. § 1208.4(a)(4)–(5) (emphases added).

In support of his argument that the BIA legally erred by "requir[ing] [him] to show both changed *and* extraordinary circumstances to qualify for an exception to the

-14-

one[-]year filing deadline," Goromou cites the following passage from the BIA's decision:

> *As discussed more fully below concerning the argued extraordinary circumstances* presented by [Goromou], the mental problems or isolation [Goromou] faced were not significantly different from others seeking asylum in the United States. From Spring of 2006, he was on notice of possible persecution in Guinea and he was under military orders to return there, but he did not file his asylum application until January 2007. We agree with the Immigration Judge that under the particular circumstances of this case, the delay in filing after the discovery of the changed circumstances was not reasonable. *See Matter of T-M-H- & S-W-C-*, *supra*.

(Emphasis added.)

The aforementioned paragraph, however, cannot be read in isolation from the remainder of the BIA's decision or the decision of the IJ, whose findings and reasoning the BIA agreed with. *See Gutierrez-Vidal v. Holder*, 709 F.3d 728, 731–32 (8th Cir. 2013) ("We review the BIA's decision, as it is the final agency action, but to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." (quotation and citation omitted)). Reading the BIA's decision in conjunction with the IJ's decision, we conclude that the BIA did not require Goromou to show both changed and extraordinary circumstances.

First, the IJ *separately* analyzed both exceptions and concluded that Goromou qualified for neither. As to the extraordinary-circumstances exception, the IJ found that depression did not prevent Goromou from applying for asylum within one year of his entry, nor did isolation or PTSD. Additionally, even assuming that these illnesses were "extraordinary circumstances," the IJ concluded that Goromou did not "file[] within a reasonable time after the end of his legal status in the United States."

-15-

As to the changed-circumstances exception, the IJ concluded that although Goromou "established that changed circumstances existed when he learned that his name was on a blacklist in the spring of 2006, some time after March 15, 2006," he failed to "establish[ ] that he filed his application for asylum within a reasonable time of learning about the changed circumstances." Goromou called his wife "sometime after March 15, 2006, and before May 22, 2006," but Goromou did not file his first asylum application until January 3, 2006. "Thus, [Goromou] waited approximately nine months to file his asylum application. The [IJ] d[id] not believe that applying for asylum nine months after learning of changed circumstances is within a reasonable period of time." As discussed *infra*, the IJ also concluded that Goromou failed to "establish[ ] that changed circumstances existed when he received the letter from his wife on approximately November 26, 2006," because "both his original claim of fear in spring 2006 and his alleged new fear in November 2006 are on account of the same ground and from the same persecutors."

Second, the BIA made clear in its order that it was affirming the IJ's findings that Goromou failed to establish both "changed circumstances" and "extraordinary circumstances." As to "changed circumstances," the BIA specifically stated, "Given the facts outlined above, we first agree with the Immigration Judge that any changed circumstances materially affecting [Goromou's] asylum claim and excusing his late filed asylum application arise from the telephone call from his spouse in the Spring of 2006 rather than the letter of November of 2006." After noting its agreement with the IJ that "there were changed circumstances of which [Goromou] was aware from the time he received the telephone call in the Spring of 2006, [the BIA] [then] turn[ed] to whether the respondent filed his asylum application within a reasonable time from this change."

Thereafter, the BIA included the paragraph Goromou cites as evidence that the BIA required him to show both changed *and* extraordinary circumstances. But this is not a fair reading of the decision. We agree with the government that, by referencing

-16-

Goromou's "extraordinary circumstances" argument regarding his mental problems and isolation in the context of the "changed circumstances" exception, the BIA was not "conflating" the two exceptions; instead, it was finding that Goromou's mental condition did not excuse the untimeliness of his asylum application under either exception. Moreover, the BIA agreed with the IJ that Goromou unreasonably delayed filing his asylum application after the spring 2006 telephone call; therefore, he did not file within a reasonable time of the changed circumstances. The BIA then *separately* analyzed Goromou's "extraordinary circumstances" argument, stating, "We also agree that [Goromou] has not presented extraordinary circumstances to allow his late filed application for asylum." The BIA analyzed the "reasonableness" inquiry first, concluding that "[u]nder the particular circumstances here, the delay was not reasonable." Then, the BIA addressed Goromou's claim that "he was suffering from mental incapacity and isolation and that this also presents extraordinary circumstances which delayed his filing." The BIA "agree[d] with the Immigration Judge that [Goromou's] health and isolation issues do not present extraordinary circumstances for his failure to file his asylum application in a timely manner."

The BIA committed no legal error because it did not require Goromou to show both "changed circumstances" and "extraordinary circumstances" to excuse his untimeliness. Instead, a fair reading of the BIA's decision is that it independently analyzed both exceptions and agreed with the IJ that Goromou met neither of them.

B. *"Material" Change in Circumstances*

Goromou also argues that the BIA legally erred in holding that the November 2006 letter was not "material" to his asylum claim because the letter "established an objectively reasonable fear of imminent persecution specific to him and his family." Goromou maintains that "[w]hether undisputed changed circumstances 'materially affect' an applicant's eligibility for asylum eligibility under 8 U.S.C. § 1158(a)(2)(D) is a reviewable question of law."

-17-

"Under the statutory framework, however, the decision whether such [changed] circumstances exist is a discretionary judgment of the Attorney General." *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005) (citing 8 U.S.C. § 1158(a)(2)(D) (the applicant must demonstrate extraordinary or changed circumstances "to the satisfaction of the Attorney General")). An "IJ's conclusion that [an alien] lacked sufficient credible evidence to meet the materiality standard is not a question of law." *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011) (citing *Restrepo v. Holder*, 610 F.3d 962, 964 (7th Cir. 2010) (noting that because the Seventh Circuit limits § 1252(a)(2)(D) to strictly legal controversies, it is not authorized to review applications of law to facts); *Khan v. Filip*, 554 F.3d 681, 687–89 (7th Cir. 2009) (concluding that the Seventh Circuit's review under § 1252(a)(2)(D) is limited to "pure" questions of law); *Vasile v. Gonzales*, 417 F.3d 766, 768–69 (7th Cir. 2005) (holding that the BIA's determination that an alien did not file his asylum claim within one year and did not qualify for an extension of time was an unreviewable question of fact and exercise of discretion)). Therefore, the BIA's agreement with the IJ "that any changed circumstances materially affecting [Goromou's] asylum claim and excusing his late filed asylum application ar[o]se from the telephone call from his spouse in the Spring of 2006 rather than the letter of November of 2006" constitutes a "discretionary decision[]" that is "unreviewable by this court." *See Ignatova*, 430 F.3d at 1214.

### III. *Conclusion*

For the foregoing reasons, we lack jurisdiction and therefore dismiss Goromou's petition for review.

MURPHY, Circuit Judge, dissenting.

I agree with the majority that the board did not conflate the "changed" and "extraordinary" circumstances requirements, but I do disagree with the conclusion that the board's decision that Goromou's November letter was not a "material" change in

circumstances cannot be reviewed. That decision rested on a pure legal error which we have jurisdiction to review.

Though courts generally lack jurisdiction to review determinations regarding exceptions to the one year asylum deadline. 8 U.S.C. § 1158(a)(3), the REAL ID Act of 2005 clarified that we retain jurisdiction over constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D). Only "the BIA's factual findings or discretionary judgments . . . are insulated from judicial review." Purwantono v. Gonzales, 498 F.3d 822, 824 (8th Cir. 2007). Interpretations of statutes, including the definition of statutory terms, are legal questions over which we retain jurisdiction. Munoz-Yepez v. Gonzales, 465 F.3d 347, 351 (8th Cir. 2006). "When the BIA applies an incorrect legal standard, the proper remedy is to remand the case to the agency for further consideration." Corado v. Ashcroft, 384 F.3d 945, 948 (8th Cir. 2007).

A fact is material if it is "predictably capable of affecting [or] had a natural tendency to affect [] the official decision." Kungys v. United States, 485 U.S. 759, 771 (1987). The majority characterizes the materiality inquiry as one of applying law to facts, ante at 18 (citing Abraham v. Holder, 647 F.3d 626, 632 (7th Cir. 2011)), and that therefore the board's decision is a discretionary judgment insulated from our review. I agree that if the board had decided that the November letter was not "predictably capable of affecting [or] had a natural tendency to affect" the validity of Goromou's asylum claim, Kungys, 485 U.S. at 771, we would not be able to review that decision.

The problem in this case is that the board made no such finding. Nowhere in its decision does the board analyze the November letter under the proper materiality standard, making it impossible to determine the legal basis for the board's decision. See Omondi v. Holder, 674 F.3d 793, 800–01 (8th Cir. 2012) ("The IJ or BIA must give reasons that are specific enough that a reviewing court can appreciate the reasoning behind the decision and before the requisite judicial review.") (quotation omitted). Here, the IJ had conceded that the letter did in fact have an impact on her

decision, both by buttressing Goromou's credibility and by helping establish a likelihood of future persecution. The board did not hold that the letter was immaterial because it was not capable of affecting the asylum decision, but that the letter only "reiterate[d] the problems first outlined to him earlier by his spouse in his telephone call." While the board concluded this letter may have "provided additional support for [Goromou's] claim of fear of the government," it did not articulate a new and independent basis upon which Goromou could claim asylum.

This was an erroneous interpretation of what changes qualify as "material," and thus was purely an error of law. Nothing in the statute or our precedents requires that changed circumstances provide an additional ground for relief, only that they "materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D). Kungys only requires that the change have a natural tendency to affect the claim for asylum. Goromou's case is an excellent example of how new evidence can have such an effect even when it only buttresses a previously available ground for relief.

Had Goromou submitted his asylum application prior to receiving the "nonmaterial" November letter, he likely would have lost. Without the letter, Goromou's asylum case rested solely on (1) an uncorroborated phone call alleging he was on a "black list" of indeterminate date based on events that had occurred a decade prior, and (2) that he had been simultaneously scheduled for execution while being sent to America for a prestigious military training exercise. The IJ stated that she found this sequence of events "strange" and "slightly implausible." By the IJ's own admission, however, it was the additional corroborating evidence, including the November letter, that convinced her to believe Goromou's story, and was likewise essential in proving to the IJ that Goromou would "more likely than not . . . face persecution if he returns to Guinea."

Adopting the board's novel definition of "material" could have the perplexing consequence of forcing an applicant to file an unsubstantiated asylum claim in similar circumstances because the evidence that would actually establish an objective fear of

-20-

future persecution would not qualify as material.  If the board's error were characterized as one of discretion rather than law, it is unclear if there could ever be a case where we could review and correct a mistaken interpretation of the statutory term "materially."

Section 1252(a)(2)(D) shields discretionary judgments by the board from reversal by the appellate courts, preserving appellate review only for legal and constitutional errors.  It is thus unsurprising that immigrants will try to "cloak[] an abuse of discretion argument in constitutional [or legal] garb" in an attempt to access judicial review.  Meraz-Reyes v. Gonzales, 436 F.3d 842, 843 (8th Cir. 2006).  On the other hand, opposing counsel may characterize legal errors as discretionary judgments in order to insulate such mistakes from review.

Faithful application of the REAL ID Act requires careful review of the whole record to distinguish legal errors from matters of discretion.  Here, the board's mistake was of a purely legal character.  Once the IJ determined that the letter impacted Goromou's credibility and his likelihood of facing future persecution, materiality was established.  The board's decision rests wholly on its erroneous interpretation that "materially" in § 1158 requires that a change in circumstances create a new basis for relief.  Such a mistake is one of statutory interpretation, not discretionary judgment, and lies within the court's jurisdiction to correct.  See Munoz-Yepez, 465 F.3d at 351.  I would therefore vacate the board's decision and remand for determination of whether the 38 day delay between Goromou's receipt of the letter and his asylum filing was reasonable.

———————————————