# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-3779
No. 22-2383
_____

Flavio Pacheco-Moran

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: February 14, 2023
Filed: June 5, 2023
_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Flavio Pacheco-Moran, a forty-seven-year-old native and citizen of Mexico, first entered the United States in 1991 and most recently in 1996 without inspection. The Department of Homeland Security ("DHS") initiated removal proceedings in January 2013. Pacheco-Moran conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"),

claiming past persecution and a well-founded fear of future persecution and torture in Mexico because of his membership in two Particular Social Groups ("PSGs"), "Married Homosexual Men" and "Homosexual Men in Mexico." More than five years later, after evidentiary hearings but before Pacheco-Moran applied to the U.S. Citizenship and Immigration Services for a U-visa, the Immigration Judge ("IJ") denied Pacheco-Moran's motion for a continuance to file a U-visa application. Then, in a lengthy Decision and Memorandum, the IJ denied his application for asylum, withholding of removal, and CAT relief on the merits. The Board of Immigration Appeals ("BIA") dismissed Pacheco-Moran's administrative appeal in a November 2021 opinion and denied his motion to reconsider in June 2022. Pacheco-Moran petitions for review of both BIA orders. We deny the petitions for review.

## I. Background

To be eligible for asylum, an applicant must show that he is a refugee, defined in the Immigration and Nationality Act as a person unable or unwilling to return to his native country due to past persecution or a well-founded fear of future persecution "on account of race, religion, nationality, *membership in a particular social group*, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i) (emphasis added). The INA also provides that the asylum applicant must "demonstrate[] by clear and convincing evidence that the application has been filed within one year after the alien's arrival in the United States." § 1158(a)(2)(B). Pacheco-Moran's last arrival was in 1996, more than sixteen years prior to the removal proceedings. He had not applied for asylum. The INA provides that an application may be considered if the alien satisfies the Attorney General of "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing." § 1158(a)(2)(D).

At an initial hearing in April 2013, the IJ asked Pacheco-Moran's attorney if Pacheco-Moran is "seeking any sort of a U visa." See generally Islas-Saldana v.

Garland, 59 F.4th 927 (8th Cir. 2023). Counsel responded that Pacheco-Moran was a victim of a qualifying 1996 felony assault crime in Compton, California. Counsel was "having difficulties" obtaining the required law enforcement certification. The IJ scheduled the next hearing for September 9, 2013 and directed Pacheco-Moran to file by that day a Form I-589 application for asylum and other relief, adding that "I would expect . . . a brief . . . defining the basis under which [he] is seeking relief. For example, if it's under a particular social group, to define the particular social group, and then also analyze the relevant case law."

On September 9, Pacheco-Moran filed a Memorandum of Law stating that he "is eligible for asylum and withholding of removal on the basis of his membership in a particular social group as a married homosexual male." However, prior to an evidentiary hearing almost five years later, he filed a Brief arguing that he "is a member of the [PSG] -- 'Homosexual Men in Mexico,'" and that his marriage in 2013 is a "changed circumstance" that excuses his failure to file an asylum application within one year of his arrival in the United States in 1996. To Pacheco-Moran's benefit, the IJ treated these inconsistent filings as articulating two separate PSGs and proceeded to consider both. The IJ found that both married homosexual men and homosexual men in Mexico are valid PSGs.

At the evidentiary hearing, Pacheco-Moran testified regarding mistreatment and harassment he suffered as a teenage boy in Mexico because he was recognized to be homosexual, testimony the IJ found credible. Though his parents separated, Pacheco-Moran's father "yelled at him and hit him with a belt almost every day" and once, after he locked himself in a bathroom, "started pouring water on [him] with a hose . . . [and] said he would pour water on [him] until he drown[ed]." Pacheco-Moran testified he was made fun of and called a "'fag,' 'queer,' and 'homosexual.'" Once, bigger classmates "asked him if he was a faggot," "threw [a] pot of food out of his hands," "circled him," and "hit him." He testified his nose bleeds regularly from these incidents though a doctor said his nose bleeds because of the climate. He

-3-

considered suicide when he was eleven or twelve years old. He was last assaulted when he was around thirteen or fourteen.

Pacheco-Moran left Mexico in 1991 and arrived in the U.S. at age 17. He came out as a gay man when he moved to Minnesota in 2000. He met his husband Edgar, a native of Mexico City, in November 2007. They married in August 2013 and participate in LGBT events in Minnesota, including the gay pride parade. His sister in Mexico told him that a classmate was murdered in 2016. Pacheco-Moran testified that "[e]verybody says it's because he was gay, but his family never said why he was killed." Pacheco-Moran fears returning to Mexico because "it is not acceptable to be homosexual there." "There is a law that permits homosexual marriage, but it's not acceptable in society." He has sought phychological help since the removal proceedings began because of the stress and fear of what might happen if he returns to Mexico.

## II. Discussion

Like the IJ, we will separately analyze the two PSGs because the one-year asylum bar in 8 U.S.C. § 1158(a)(2) impacts the two groups differently. We review the BIA's determinations "under the deferential substantial evidence standard." Cambara-Cambara v. Lynch, 837 F.3d 822, 826 (8th Cir. 2016). The evidence presented "must be so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

## A. Married Homosexual Men.

**1. Asylum.** The IJ ruled that § 1158(a)(2)(B) does not bar Pacheco-Moran's asylum claim based on his membership in this PSG because he was not a married homosexual male until his August 12, 2013 marriage one month before he filed his

-4-

asylum application. The IJ found the marriage was a changed circumstance that materially affected eligibility for asylum based on this PSG.

Turning to the merits of this claim, the IJ noted that Pacheco-Moran has not alleged harm or persecution after his marriage and therefore is not entitled to a rebuttable presumption that his fear of future persecution is well-founded. The IJ found that Pacheco-Moran "does not have an objective fear of future persecution on account of his membership" in this PSG. The IJ found that Pacheco-Moran "did not submit evidence that suggested that married homosexual men face additional or different harms from homosexual men or members of the LGBT community which would rise to the level of persecution." Although he submitted numerous reports of incidents that "may suggest a practice of discrimination or a societal disapproval of LGBT individuals, they do not rise to the level of persecution. Less severe harm such as discrimination or disadvantage on the basis of a protected characteristic does not ordinarily amount to persecution," correctly citing Fisher v. INS, 291 F.3d 491, 497-98 (8th Cir. 2002). The IJ also found that Pacheco-Moran could reasonably relocate to Mexico City, where his spouse is from, a place where there is ample evidence a married homosexual would not suffer persecution. Concluding that Pacheco-Moran "does not cite sufficient evidence to show that married homosexual men in Mexico are persecuted because of their membership in this group," the BIA upheld the IJ's denial of asylum.

On appeal, Pacheco-Moran argues "[c]ountry conditions establish that the viciously homophobic environment in Mexico should satisfy the 10% likelihood that is necessary for future persecution on a protected ground to be adequate for granting asylum." We review factual determinations, including "the ultimate question of past persecution or well-founded fear of future persecution," under the substantial evidence standard. He v. Garland, 24 F.4th 1220, 1224 (8th Cir. 2022). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

"Persecution is an extreme concept that does not encompass low-level intimidation and harassment." Ladyha v. Holder, 588 F.3d 574, 578 (8th Cir. 2009) (quotation omitted). Here, substantial evidence supports the IJ and BIA finding that Pacheco-Moran failed to demonstrate a well-founded fear of persecution based on membership in this PSG. "[S]lurs and harassment from private individuals . . . do not constitute persecution." Fisher, 291 F.3d at 497. Pacheco-Moran failed even to cite, much less distinguish, these controlling Eighth Circuit cases.

**2. Withholding of Removal.** To be eligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), Pacheco-Moran must establish a "clear probability" that his "life or freedom would be threatened" in Mexico because of his membership in this PSG. Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005). The IJ and the BIA found, consistent with controlling Eighth Circuit precedent, that Pacheco-Moran did not satisfy this clear probability standard because he did not meet the lower statutory burden of proof required for asylum. See, e.g., Tojin-Tiu v. Garland, 33 F.4th 1020, 1024 (8th Cir. 2022). We agree. On appeal, Pacheco-Moran argues this was a "false[] finding," citing cases from two other circuits. Whatever the rule in other circuits, we must follow our binding circuit precedent.

**3. CAT Relief.** An applicant is eligible for CAT relief if he proves that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Separate analysis of a CAT claim is required only when there is evidence that the person might be tortured for reasons unrelated to his claims for asylum and withholding of removal. See Alemu, 403 F.3d at 576. The IJ found that Pacheco-Moran had not presented evidence of a claim for relief unrelated to his underlying claim for asylum and withholding of removal and therefore denied his application for relief under the CAT. We agree. On appeal, Pacheco-Moran simply repeats his factual arguments in support of asylum and withholding of removal and argues he "merits protection under CAT."

### B.  Homosexual Men in Mexico

**1. Asylum.**  The IJ found that Pacheco-Moran failed to show changed circumstances or extraordinary circumstances and therefore the one-year bar precluded the grant of asylum under this PSG.  Taking up the three circumstances on which Pacheco-Moran relied, the IJ found, first, that his marriage to Edgar was not a changed circumstance that materially affected his eligibility for asylum because it did not change his decades-long membership in the group or affect his eligibility for asylum based on this group.  Second, the murder of his friend Miguel did not create a new ground for relief and occurred twenty years after Pacheco-Moran's most recent arrival in the United States.  Third, Pacheco-Moran's mental health and recent PTSD diagnosis were not extraordinary circumstances that prevented timely filing given that he worked in the United States from 1996 until he filed his asylum application.  The BIA upheld these findings.

Pacheco-Moran argues the BIA erred in finding he did not meet one of the exceptions to the one-year bar in 8 U.S.C. § 1158(a)(2)(B).  The government responds that § 1158(a)(3) deprives us of jurisdiction to review this issue.  That statute provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."  There is strong Eighth Circuit support for this argument.  See Goromou v. Holder, 721 F.3d 569 (8th Cir. 2013); Manani v. Filip, 552 F.3d 894, 899-901 (8th Cir. 2009).  The IJ's finding that Pacheco-Moran did not demonstrate extraordinary or changed circumstances is an unreviewable discretionary judgment of the Attorney General.  See Goromou, 721 F.3d at 579-80.

Pacheco-Moran argues we should reject these cases and follow contrary rulings of the Ninth Circuit, which of course our panel may not do.  Pacheco-Moran also argues the Supreme Court's recent decision in Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1068 (2020), which stated that the term "questions of law" in 8 U.S.C. § 1252(a)(2)(D) "includes the application of a legal standard to undisputed or

established facts," governs this issue. Guerrero-Lasprilla did not involve the one-year time bar in § 1158(a)(2), and Pacheco-Moran's argument on its face would strip § 1158(a)(3) of all effect, contrary to established principles of statutory construction. See Sharif v. Barr, 965 F.3d 612, 620 (8th Cir. 2020) ("no administrative case can be decided without applying some law to some facts"). As in Sharif, "we refuse to adopt a reading of § 1252(a)(2)(D) that vitiates [§ 1158(a)(3)]." Id. (cleaned up). Alternatively, if we do have jurisdiction to review the one-year-bar issue, we agree with the BIA's determination for the reasons stated in the IJ and BIA opinions.

**2. Withholding of Removal.** Having found the asylum claim barred, the IJ turned to the withholding of removal claim based on this PSG. "Even cumulatively," the IJ ruled, "the harm [Pacheco-Moran] suffered does not amount to past persecution. See Barillas-Mendez v. Lynch, 790 F.3d 787 (8th Cir. 2015)." On appeal, Pacheco-Moran argued the IJ failed to consider mental and emotional harm he experienced in Mexico. The BIA responded, citing 8 C.F.R. § 1208.13(b)(1):

> As the [IJ] found, however, even if this constitutes persecution under the Act, the [DHS] rebutted the presumption that the respondent has a clear probability of persecution today by showing that he 'could avoid future persecution by relocating to another part' of Mexico and that . . . 'it would be reasonable to expect' him to do so.

Pacheco-Moran argues "internal relocation is not reasonable because country conditions as well as credible testimony [of anti-gay hate crimes committed not far from Mexico City] establish the [he] would face other serious harm in the place of suggested relocation." Under the deferential substantial evidence standard, evidence of "general, widespread discrimination" does not trump the BIA's finding, based on specific facts in the administrative record, that Pacheco-Moran could avoid future persecution by reasonably relocating from his rural home town to another part of Mexico. See Molina-Cabrera v. Sessions, 905 F.3d 1103, 1106 (8th Cir. 2018). The BIA pointed to Mexico City, where Pacheco-Moran's husband is from and which is

-8-

reported to have "taken the lead in . . . taking measures to protect the rights of the LGBT population."

## C. An Alleged Third PSG

Pacheco-Moran also argues that the IJ and BIA ignored a third PSG for which he would qualify for asylum: "Mexicans Perceived to be Against Catholicism." Therefore, fundamental fairness requires that we remand for factual findings on this issue. We agree with the government this issue was not properly preserved.

The IJ insisted that Pacheco-Moran define any PSG on which his claim is based, with supporting authorities. In separate briefs filed five years apart, he identified the two PSGs we have discussed. At the evidentiary hearing, in response to leading questions, a friend who grew up in Mexico and met Pacheco-Moran in Minnesota testified that Catholics "don't accept the gay community at all," and that "Our family . . . . [t]hey're Catholics, they don't like homosexuals." Then, in closing argument, counsel for Pacheco-Moran argued:

> I would argue that because Mexico is so Catholic . . . . Being gay . . . sort of constitutes an opposition to the religion and so I think we could also add another basis based on [Pacheco-Moran] being perceived as being non-Catholic or just a person who threatened the Catholic religion by engaging in prohibited behavior in the view of the Catholic people.

As Pacheco-Moran had not identified this as a PSG, and that argument did not begin to define this PSG, the IJ did not discuss it. On appeal, on page 20 of his appeal Brief, Pacheco-Moran argued the BIA must remand because the IJ failed to consider future persecution based on his membership "in a group of 'Mexican gay men perceived as being opposed to the Catholic religion.'" The BIA's opinion did not discuss this contention because Pacheco-Moran "did not raise this in his asylum application or briefs to the Immigration Judge." The BIA has held that issues not

raised before the IJ are not preserved to appeal. Where the agency has properly applied its own waiver rule and not considered an issue first raised on appeal, we will not address that contention for the first time in a petition for judicial review. See Pinos-Gonzalez v. Mukasey, 510 F.3d 436, 440 (8th Cir. 2008), citing Etchu-Njang v. Gonzales, 403 F.3d 577, 583 (8th Cir. 2005).

## D. Continuance Issues

1. In September 2018, following delays because the Los Angeles Police Department could not find the file relating to the 1996 assault, Pacheco-Moran received a Form I-918, Supplement B, U Nonimmigration Status Certification signed by Sergeant Eric Johnson of the L.A. County Sheriff's Office stating that Pacheco-Moran cooperated with police during the investigation after being the victim of a felony assault. Pacheco-Moran moved to continue the removal proceedings based on the Form I-918B, requesting additional time to file his U-visa application. The Attorney General's regulations provide that an IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29 (2012). DHS opposed a continuance, arguing Pacheco-Moran did not show good cause, the merits hearing was concluded, and his application for relief from removal should not be delayed for this reason. The IJ denied Pacheco-Moran's motion for continuance on September 19 for the reasons stated in the government's opposition.

The IJ then issued her order denying Pacheco-Moran relief from removal on October 24. He applied to USCIS for a U-visa on November 15, 2018. In its November 2021 opinion dismissing Pacheco-Moran's appeal, the BIA upheld the IJ's denial because he "does not cite evidence sufficient to establish good cause for a continuance at the time the [IJ] ruled." Pacheco-Moran argues the BIA erred in upholding the IJ's denial. We review the denial of a motion for a continuance for abuse of discretion. See Hernandez v. Holder, 606 F.3d 900, 903 (8th Cir. 2010).

In Matter of Sanchez-Soza, the BIA articulated non-exhaustive factors that an IJ should consider in exercising this discretion: "(1) the DHS's response to the motion; (2) whether the underlying visa petition is prima facie approvable; and (3) the reason for the continuance and other procedural factors." 25 I&N Dec. 807 (BIA 2012). Pacheco-Moran argues the IJ abused her discretion because the denial "contained no reasoning concerning the Sanchez-Sosa factors." This is irrelevant if the record confirms that Pacheco-Moran failed to establish good cause. See Maldonado-Guzman v. Sessions, 715 F. App'x 277, 282-83 (4th Cir. 2017).

Viewing the issue in light of the Sanchez-Sosa factors, first, DHS timely opposed the motion for continuance, giving reasons the IJ found persuasive. Second, in September 2018, there was no U-visa application pending, as there was in Sanchez-Soza, making the likelihood of ultimate U-visa success merely speculative. Third, the underlying crime occurred in 1996, and Pacheco-Moran offered no explanation for his twenty-year delay in filing a U-visa application except that the L.A. police had difficulty finding the file in 2013, when he first inquired. In these circumstances, the IJ could anticipate a lengthy delay in completing the removal proceedings if she granted a post-hearing continuance. "An IJ traditionally has discretion to avoid unduly protracted proceedings." Choge v. Lynch, 806 F.3d 438, 441 (8th Cir. 2015) (quotation omitted). The BIA did not err in finding no abuse of the IJ's discretion.

2. On December 8, 2021, Pacheco-Moran moved the BIA to reconsider the denial of relief from removal and to remand to allow him "to apply for a continuance or the newly available relief in the form of administrative closure." Pacheco-Moran argued: first, that the BIA should reconsider because it provided no analysis of the Sanchez-Sosa factors, an argument we have already rejected. Second, his now-pending U visa petition "is prima facie approvable," and our recent decision in Quecheluno v. Garland, 9 F.4th 585 (8th Cir. 2021), held that filing a U visa application after entry of the IJ's order constitutes a new fact for purposes of a motion to reopen. Third, a recent decision of the Attorney General made administrative

closure newly available relief. The BIA denied the motion to reconsider on June 2, 2022, noting that Pacheco-Moran had not previously requested administrative closure from the IJ or the BIA, and finding that he had not shown (i) he was likely to succeed on his U-visa application, and (ii) he had not contributed to the delay in seeking a U-visa. Pacheco-Moran separately appeals this ruling.

"We review decisions . . . denying motions to reopen or reconsider for abuse of discretion." Mohamed v. Barr, 983 F.3d 1018, 1022 (8th Cir. 2020). As we have repeatedly stated, and as the Attorney General's procedural regulations reflect, these motions "are disfavored because there is a strong public interest in litigation finality." Robles v. Garland, 23 F.4th 1061, 1063 (8th Cir. 2022) (quotation omitted). The BIA has stated, "[a]s a general rule, a party who seeks to reopen proceedings to pursue relief bears a 'heavy burden' of proving that if proceedings were reopened, the new evidence would likely change the result in the case." Barrera Arreguin v. Garland, 29 F.4th 1010, 1017 (8th Cir. 2022), quoting Matter of Coelho. 20 I&N Dec. 464, 472-73 (BIA 1992).

Pacheco-Moran does not clear this high bar. First, as we have stated, the Sanchez-Soza factors do not weigh in his favor. Second, as in Islas-Saldana, we conclude Quecheluno is readily distinguishable. 59 F.4th at 931 n.1. Here, the government has not conceded that Pacheco-Moran is prima facie eligible for a U-visa based on a crime that occurred twenty-six years ago, and he offers no explanation for the delay between 1996 and 2013, when the commencement of removal proceedings prompted him to apply. Third, the BIA hardly abused its discretion in not remanding for an administrative closure inquiry based on the Attorney General's ruling in Matter of Cruz-Valdez, 28 I&N Dec. 326 (A.G. 2021), that revived this procedure. In denying reconsideration, the BIA applied its pre-existing administrative closure

-12-

precedent and found that Pacheco-Moran had shown neither a likelihood of success in his U-visa application nor that he had not contributed to the delay in seeking the visa.  See Matter of Avetisyan, 25 I&N Dec. 688, 696 (BIA 2012).

For the foregoing reasons, we deny the petitions for review.

_____