PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICHARD RONALD KPORLOR,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent.*

No. 08-2363

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: January 26, 2010

Decided: March 5, 2010

Before WILKINSON, NIEMEYER, and MICHAEL,
Circuit Judges.

---

Petition dismissed by published opinion. Judge Wilkinson
wrote the opinion, in which Judge Niemeyer and Judge
Michael joined.

---

## COUNSEL

**ARGUED**: Shimica D. Gaskins, COVINGTON & BURL-
ING, LLP, Washington, D.C., for Petitioner. Kiley L. Kane,
UNITED STATES DEPARTMENT OF JUSTICE, Washing-
ton, D.C., for Respondent. **ON BRIEF:** Caroline Brown,

COVINGTON & BURLING, LLP, Washington, D.C., for Petitioner. Tony West, Assistant Attorney General, Civil Division, John S. Hogan, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

WILKINSON, Circuit Judge:

Richard Kporlor is a Liberian citizen in his late twenties who has lived in the United States as a lawful permanent resident since September 2001. After returning from a trip to Liberia, Kporlor was detained when officials found that he had a criminal record, and removal proceedings were initiated against him. Kporlor filed claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT), but the Immigration Judge (IJ) reviewing the case found that none had merit. Kporlor appealed only the withholding of removal order, and the Board of Immigration Appeals (BIA) affirmed. Kporlor has now petitioned this court for review of that claim and his CAT claim.

We must dismiss Kporlor's petition because 8 U.S.C. § 1252(a)(2)(C) strips us of jurisdiction to review BIA denials of withholding of removal in cases involving certain criminal aliens. Additionally, we lack jurisdiction to review Kporlor's CAT claim because Kporlor did not appeal the IJ's denial of that claim to the BIA and thus did not exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d)(1).

I.

The parties do not dispute that Kporlor committed crimes which subject him to removal. Indeed, Kporlor admits that he

"has been convicted of a crime of moral turpitude," Br. of Petitioner at 20, triggering removal under 8 U.S.C. § 1182(a)(2)(A)(i)(I). He was convicted in August 2003 of Grand Larceny, Va. Code Ann. § 18.2-95, and of Procuring a Vehicle with Intent to Defraud, Va. Code Ann. § 18.2-206.[1] Kporlor explained to the IJ that the underlying behavior for these offenses consisted of taking several taxi cab rides for which he could not pay. Additionally, Kporlor testified that he was convicted of identity fraud and of two violations of a protective order against him sought by his ex-fiance, although those crimes did not form the basis for his removability.

Although the convictions in this case occurred in 2003, Kporlor was not detained until April 10, 2007, when he applied for reentry into the country after a trip to Liberia. He was charged with removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as a criminal alien convicted of a crime involving moral turpitude.[2]

In response, Kporlor applied for asylum, withholding of removal, and protection under CAT. He claimed he feared to return to Liberia because he had been tortured and forced by the Liberian government to serve as a child soldier in the early 1990's during Liberia's Civil War and believed he would face future persecution there as a result.

---

[1]The record is unclear as to whether Kporlor was convicted of Grand Larceny, Va. Code Ann. § 18.2-95, or Petit Larceny, Va. Code Ann. § 18.2-96. Both the IJ's Memorandum of Decision and the government's briefing indicate Grand Larceny, while petitioner's brief and a printout from the Virginia Courts Case Information system indicate Petit Larceny. The parties do not discuss this apparent inconsistency, however, and it is not dispositive in the present case.

[2]Lawful permanent residents such as Kporlor generally are "not . . . regarded as seeking an admission into the United States for purposes of the immigration laws," 8 U.S.C. § 1101(a)(13)(C), but Kporlor's conduct falls within an exception for violations of Section 1182(a)(2), and as such he could be charged as removable. *See* 8 U.S.C. § 1101(a)(13)(C)(v).

The IJ held multiple hearings and eventually denied Kporlor's withholding and CAT applications,[3] finding that Kporlor's testimony was not credible and that documentary evidence from both sides indicated that child soldiers were not used by Liberian government forces at the time Kporlor claimed he was conscripted by them. Although Kporlor testified to truly horrible experiences as a child, including assertions that he was beaten, had boiling water and melted wax poured on his body, had the bottoms of his feet cut open, and was shot in both legs, the IJ found that multiple inconsistencies undermined his assertions.

Perhaps more importantly, Kporlor admitted that he had recently made two separate trips to Liberia, and the IJ found that he had "stayed for lengthy periods of time, without suffering any harm." Further, the IJ noted that the fact of Kporlor's "repeated travel to Liberia undermines both his credibility and his claim that he would fear for his safety if returned there." While Kporlor claimed that he had to sneak in and out of the country on both trips, his travel documents were stamped with regular entry and exit stamps from the main airport in Monrovia, Liberia's capital city. Kporlor claimed that the stamps were forged but provided no evidence in support.

Kporlor also failed to provide any support for his claim that he was forced into making the two Liberia trips after facing possible desertion charges from the United States Marine Corps. Indeed, not only did Kporlor fail to produce any documentation of the purported desertion charges, but he also failed even to provide evidence (beyond his own assertion) to show that he was ever in the Marine Corps at all.

---

[3]The IJ did not rule on Kporlor's asylum application because it was not made within one year of his arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B). Kporlor did not appeal this decision, and it is not before us.

After the IJ denied Kporlor's applications for withholding of removal and CAT protection, Kporlor, acting through *pro bono* counsel, appealed only the withholding of removal decision to the BIA. He contested the IJ's determination that he was not credible. The BIA affirmed the decision, noting that "the Immigration Judge's credibility determination is not 'clearly erroneous' in this case."

Following the BIA's affirmation, Kporlor filed a *pro se* brief, now appealing both his withholding and CAT claims. This court appointed new counsel and asked for discussion of whether the BIA erred in not addressing the CAT claim in its disposition. Importantly for the current appeal, new counsel acknowledged that Kporlor "did not appeal his CAT claim to the BIA," and thus that "[t]he BIA did not review the IJ's denial" of that claim. Br. of Petitioner at 18. Because questions exist about our jurisdiction over both of Kporlor's claims, we must resolve them before we can even consider the merits of his contentions. As we find that we have no jurisdiction, we dismiss Kporlor's petition.

## II.

Federal appellate courts determine *de novo* whether they have subject matter jurisdiction to decide a case. *Saintha v. Mukasey*, 516 F.3d 243, 248 (4th Cir. 2008); *Tillman v. Resolution Trust Co.*, 37 F.3d 1032, 1034 (4th Cir. 1994). Jurisdictional strictures are always important, but nowhere more so than where Congress has set those strictures in an area implicating foreign affairs. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 348 (2005) ("Removal decisions . . . 'may implicate our relations with foreign powers' and require consideration of 'changing political and economic circumstances.'") (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)). Kporlor attempts in his *pro se* brief to challenge the IJ and the BIA's denial of his application for withholding of removal under 8 U.S.C. § 1231(b)(3). He argues that the IJ improperly weighed the evidence he presented in support of

his assertions that he had been tortured and faced a future risk of injury. However, the fact that Kporlor also admits that he committed a crime involving moral turpitude divests us of jurisdiction to review the claim.

This admission is an understandable one. The Supreme Court long ago explained in the immigration context that "[w]hatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." *Jordan v. De George*, 341 U.S. 223, 232 (1951). At a minimum, Kporlor's conviction for violating Va. Code Ann. § 18.2-206 by procuring a vehicle with intent to defraud qualifies as a morally turpitudinous act.

The relevant statute, 8 U.S.C. § 1252(a)(2)(C), states as follows:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) [or several other sections of Title 8].

In turn, Sections 1182(a)(2)(A)(i) and (i)(I) direct that, subject to certain exceptions not relevant here, "any alien convicted of, or who admits having committed . . . a crime involving moral turpitude . . . is inadmissible." We have noted that Section 1252(a)(2)(C) bars review completely except when it is necessary to determine whether a petitioner actually has triggered the statute's jurisdiction stripping provision. *See*, *e.g.*, *Jahed v. Acri*, 468 F.3d 230, 233, 237 (4th Cir. 2006) (no jurisdiction under 1252(a)(2)(C) except to evaluate whether petitioner was an alien who committed a prohibited criminal offense); *Afeta v. Gonzales*, 467 F.3d 402, 403-04, 408 (4th Cir. 2006) (same); *Alim v. Gonzales*, 446 F.3d 1239,

1246-51 (11th Cir. 2006) (same); *Bosede v. Mukasey*, 512 F.3d 946, 950-51 (7th Cir. 2008) (same, but reviewing purely constitutional claim under Section 1252(a)(2)(D)); *Berhe v. Gonzales*, 464 F.3d 74, 86-87 (1st Cir. 2006) (same). *But see Morales v. Gonzales*, 478 F.3d 972, 980-81 (9th Cir. 2007); *Unuakhaulu v. Gonzales*, 416 F.3d 931, 934-37 (9th Cir. 2005). In the present case, there is no argument that Kporlor is an alien, and he admits that he has committed a crime involving moral turpitude, thus subjecting him to removal. Br. of Petitioner at 20.

Section 1252(a)(2)(C)'s phrase "any final order of removal" is a broad one that precludes our consideration of the subsidiary issue of withholding of removal, a claim that is typically asserted to defend against a removal charge. While the resolution of a withholding claim need not itself rest on whether an alien committed a criminal act, it can only be triggered by a charge of removability. *See* 8 U.S.C. § 1231(b)(3)(A) (*removal* not allowed if alien's life or freedom threatened due to race, religion, nationality, membership in a social group, or political opinion). Indeed, the IJ's "order of removal" in this case makes clear that Kporlor was removable precisely because he had committed a crime of moral turpitude and that the denial of his application for withholding of removal followed from that charge. The withholding petition is neither separate from nor independent of the removal order, and courts have routinely applied the jurisdictional bar of Section 1252(a)(2)(C) to withholding claims. *See*, *e.g.*, *Jahed*, 468 F.3d at 233, 237; *Afeta*, 467 F.3d at 403-04, 408; *Alim*, 446 F.3d 1239, 1246-51. It cannot thus be said that Kporlor's withholding claim is exempt from Section 1252(a)(2)(C)'s flat prohibition against review of "any final order of removal against an alien" who has committed a crime of moral turpitude.

There is a statutory exception to Section 1252(a)(2)(C), added as part of the 2005 REAL ID Act and codified in 8 U.S.C. § 1252(a)(2)(D), but it covers only claims that raise

constitutional or legal issues, neither of which are present in this case. *See*, *e.g.*, *Mbea v. Gonzales*, 482 F.3d 276, 278 n.1 (4th Cir. 2007) (court had jurisdiction to review moral turpitude removal proceeding only because petitioner raised questions of law); *Fernandez v. Keisler*, 502 F.3d 337, 346 (4th Cir. 2007) (same; citing cases); *Saintha*, 516 F.3d at 248 (same in evaluating CAT claim by criminal alien). Here, Kporlor has only challenged the IJ's determination that his testimony was not credible, and Section 1252(a)(2)(D) does not permit review of discretionary judgments that rest on factual circumstances.

Additionally, we have explained that "BIA factual determinations include those which we would review, if we were to have jurisdiction, under the 'substantial evidence' standard." *Saintha*, 516 F.3d at 249. In this case, Kporlor's filings can only be interpreted as objecting to the weight the BIA chose to place on the evidence presented, and thus they are factual claims that do not fall within the Section 1252(a)(2)(D) exception for legal and constitutional issues. Kporlor remains an alien who "is removable by reason of having committed a criminal offense" involving moral turpitude, 8 U.S.C. § 1252(a)(2)(C), and as such we are precluded from reviewing his withholding claim.

## III.

We likewise lack jurisdiction to resolve Kporlor's claim that the IJ's rejection of his CAT claim was not supported by substantial evidence. Kporlor acknowledges that he did not appeal the IJ's CAT determination to the BIA. *See* Br. of Petitioner at 18. As a result, Kporlor has failed to exhaust his administrative remedies, depriving us of jurisdiction to review this claim.

An appellate court can "review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d) and

(d)(1). It is well established that an "alien must raise each argument to the BIA before we have jurisdiction to consider it." *Gandziami-Mickhou v. Gonzales*, 445 F.3d 351, 359 n.2 (4th Cir. 2006); *see also Asika v. Ashcroft*, 362 F.3d 264, 267 n.3 (4th Cir. 2004) (per curiam) (same); *Kurfees v. INS*, 275 F.3d 332, 336 (4th Cir. 2001) (same). "The exhaustion doctrine embodies a policy of respect for administrative agencies, which allows them to carry out their responsibilities and to discover and correct their own errors." *Kurfees*, 275 F.3d at 336 (internal citations omitted). While *Kurfees* addressed an iteration of the immigration laws enacted prior to the 2005 REAL ID Act, it remains true that "[a] rule that allowed parties to circumvent the administrative process . . . would undermine agency functions and clog the courts with unnecessary petitions. The rules are clear: before proceeding to federal court, an alien must exhaust his or her administrative remedies." *Id.*

Kporlor attempts to overcome his failure to exhaust by arguing that the same issue—the IJ's adverse credibility finding—underlies both his CAT and withholding of removal claims. *See* Br. of Petitioner at 18-19. He thus asserts that because he "appealed the adverse credibility issue to the BIA, [he] has exhausted his administrative remedies as to [CAT]." Br. of Petitioner at 15. This argument fails for several reasons.

First, the IJ's denial of Kporlor's CAT claim rested on more than an adverse credibility finding. IJs reviewing CAT claims are required to consider "all evidence relevant to the possibility of future torture," 8 C.F.R. § 208.16(c)(3). *See also Camara v. Ashcroft*, 378 F.3d 361, 372 (4th Cir. 2004). "All evidence" includes "[e]vidence of past torture," "[e]vidence that the applicant could relocate" within the country of removal, evidence of mass human rights violations, and any "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 208.16(c)(3)(i)-(iv). *See also* United Nations Convention Against Torture art. 3, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027 (same). In discussing

these requirements, we have explained that "an adverse credibility determination cannot alone preclude protection under the CAT," assuming, of course, that other evidence is presented. *Camara*, 378 F.3d at 372 (citing similar holdings from the Second, Third, Seventh, and Ninth Circuits).

The IJ in Kporlor's case properly considered all the evidence before her. She explicitly acknowledged that "the Court may not deny an alien's Convention Against Torture claim solely on the basis of an adverse credibility determination" and noted that she had considered the additional evidence that both parties provided. She concluded that "[t]he respondent also failed to present any credible evidence regarding the likelihood of future torture in Liberia," and thus that Kporlor did not meet his CAT burden of proving it was "more likely than not" that he would be tortured if removed. *See* 8 C.F.R. § 1208.16(c)(2). In light of the IJ's language, we cannot adopt Kporlor's contention that his CAT claim was denied solely on adverse credibility grounds or that simply appealing the IJ's credibility determination somehow satisfied the requirement of CAT exhaustion.

Indeed, the BIA was still entitled to notice and a first look at the CAT issue. It is incorrect to say that BIA review of one claim – withholding of removal—somehow serves as a proxy for Kporlor's failure to appeal another IJ holding. Congress chose to enact or ratify *two* separate provisions, withholding of removal, 8 U.S.C. § 1231(b)(3), and the CAT Treaty, United Nations Convention Against Torture art. 3, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027. It cannot be said that appealing a denial under the former is the same as exhausting administrative remedies under the latter.

In fact, the conditions under which withholding of removal and CAT relief can be granted are different. For instance, the eligibility standards vary. Withholding applies to any alien who can "establish that his or her life or freedom would be threatened in the proposed country of removal on account of

race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). *See also Gomis v. Holder*, 571 F.3d 353, 359 (4th Cir. 2009). In contrast, CAT protection is not limited to individuals who belong to a particular group; it applies to any alien who can show that he is more likely than not to be tortured if removed. 8 C.F.R. § 208.16(c)(2).

Similarly, the injuries against which withholding and CAT protect are distinct. Withholding can be granted if there is a risk that "the alien's life or freedom would be threatened" if removed, 8 C.F.R. § 208.16(a), while CAT relief is narrower, focusing solely on whether or not an alien is at risk of being tortured. 8 C.F.R. § 208.16(c)(2). In addition, CAT protection only applies if the alien faces a risk of being tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1); *see* 8 C.F.R. § 208.16(c)(1) ("The definition of torture contained in § 208.18(a) . . . shall govern all decisions . . . about the applicability of Article 3 of the Convention Against Torture.").

Finally, an IJ evaluates evidence differently depending on whether it is presented in the withholding or CAT context. In a withholding claim, the IJ is permitted to "presume[ ] that the applicant's life or freedom would be threatened in the future" if the applicant can show past persecution, 8 C.F.R. § 208.16(b)(1)(i). In contrast, a CAT inquiry is prospective. While past torture is one factor to be considered, *see* 8 C.F.R. § 208.16(c)(3)(i), the IJ's overall investigation is forward-looking and asks whether "it is more likely than not that [an alien] would be tortured if removed." 8 U.S.C. § 208.16(c)(2).

This brief sampling of differences between withholding and CAT claims should suffice to demonstrate why petitioner's theory of exhaustion-by-proxy cannot be sustained. To be sure, there is an overlap between the two claims, but that does not mean they are identical or that the BIA regards them inter-

changeably. While Kporlor doubtless could have brought both claims before the BIA while indicating that similar arguments applied to each and explaining differences as necessary, he did not do so. It is not difficult for an alien to apprise the BIA of a second claim on appeal. As we have explained, "upholding the exhaustion requirement may seem strict in an individual case, [but] exhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Kurfees*, 275 F.3d at 336. The BIA is entitled to an opportunity to correct any errors that may occur in immigration proceedings, and we lack jurisdiction unless it is given the chance to do so.

Because Kporlor's failure to exhaust his administrative remedies divests us of jurisdiction over his CAT claim, we need not reach his additional arguments with regard to it. For the foregoing reasons, his petition must be dismissed.

*PETITION DISMISSED*