**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1904**

CYRILLE NAZAIRE KOUAMBO,

       Petitioner,

v.

WILLIAM P. BARR, Attorney General,

       Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: October 29, 2019                Decided: November 25, 2019

Before WILKINSON, NIEMEYER, and DIAZ, Circuit Judges.

Petition for review dismissed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Diaz joined.

**ARGUED:** Nefertiti Irene Alves, JOHNSON & ASSOCIATES, P.C., Vienna, Virginia, for Petitioner. David Schor, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Mariam Masumi Daud, JOHNSON & ASSOCIATES, P.C., Vienna, Virginia, for Petitioner. Joseph H. Hunt, Assistant Attorney General, Emily Anne Radford, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

WILKINSON, Circuit Judge:

Petitioner Cyrille Nazaire Kouambo, a citizen of the Central African Republic ("CAR") seeks judicial review of an order of the Board of Immigration Appeals ("BIA") denying his application for asylum in the United States. In that order, issued July 9, 2018, the BIA affirmed the holding of an Immigration Judge ("IJ") that Kouambo was statutorily precluded from seeking asylum because he had "firmly resettled" in a third country prior to arriving in the United States. At the same time, the BIA did not address the IJ's decision to grant Kouambo withholding of removal and remanded the case to the IJ for mandatory background and security checks. Because we conclude that the BIA's July 9 remand order does not constitute a "final order of removal" within the meaning of 8 U.S.C. § 1252, we dismiss Kouambo's petition for lack of jurisdiction.

I.

Kouambo was born in the CAR on July 26, 1970. He is a member of the Yakoma ethnic group and, along with many of his family members, was a supporter of André Kolingba, a fellow Yakoma who served as President of CAR from 1981-1993. In 1993, Kolingba lost his reelection bid to General Ange-Félix Patassé, a member of the Kaba ethnic group. Soon thereafter, Patassé began a campaign of violence and discrimination against Yakomas who supported Kolingba. This campaign intensified after Kolingba launched a failed coup attempt in 2001. In the aftermath, several members of Kouambo's family were tortured, imprisoned, and killed by Patassé's allies.

Fearing for his life, Kouambo fled the CAR. After a brief stay in the Democratic Republic of the Congo, he eventually settled in the Republic of Congo ("ROC"), where he

2

remained for twelve years. During that period, Kouambo rented a home, completed medical school, obtained employment as a physician, married a Congolese woman, and had a child. Though the record is not completely free of uncertainty regarding his official immigration status, it is undisputed that in 2012 the ROC government issued Kouambo a document retroactively recognizing him as having been a refugee in the ROC since 2001.

Though his life in the ROC appeared normal in many respects, Kouambo claims that he continued to face persecution. In 2003, President Patassé was overthrown by General François Bozizé, a disaffected CAR army commander. Kouambo publicly opposed Bozizé's coup, which, according to Kouambo, was supported by the ROC government. Kouambo claims that, as a result of his political views, Bozizé partisans in the ROC regularly threatened to kill and torture him. And Kouambo maintains that he could not turn to the ROC authorities for help, as they were in league with Bozizé's government.

By 2013, Kouambo wanted to escape the ROC. Though Kouambo is not a Congolese citizen, his father-in-law leveraged personal connections within the ROC government to procure an ROC passport for him. In October 2013, Kouambo used that passport to travel to the United States, which he entered without a valid entry document. He has resided in the United States since his arrival in 2013.

On August 5, 2014, Kouambo filed an asylum application with the Department of Homeland Security ("DHS"). Then, on October 2, 2014, DHS issued Kouambo a Notice to Appear charging that he was subject to removal pursuant to § 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(A), as an alien who was

3

inadmissible for not possessing a valid entry document at time of entry. Kouambo duly appeared before an IJ, at which point he conceded his removability but sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). On May 11, 2017, the IJ held a hearing on Kouambo's claims, during which Kouambo testified in detail about his life in the CAR and ROC and his reasons for seeking asylum in the United States.

The IJ issued a written decision denying Kouambo's asylum application on July 17, 2017. Specifically, the IJ concluded that Kouambo had "firmly resettled" in the ROC prior to his arrival in the United States such that his asylum claim was statutorily barred pursuant to 8 U.S.C. § 1158(b)(2)(A)(vi). See J.A. 60-62. Consequently, the IJ ordered Kouambo removed to the CAR. But because Kouambo established that, if he were to return to the CAR, he would more likely than not be subject to further persecution as a result of his political activities, the IJ granted his request for withholding of removal.[*]

Kouambo appealed the IJ's denial of his asylum claim to the BIA. On July 9, 2018, the BIA issued a written opinion agreeing with the IJ's conclusion that Kouambo's asylum application was statutorily barred. As a result, it dismissed Kouambo's appeal and remanded the case to the IJ "for the purpose of allowing the [DHS] the opportunity to complete or update identity, law enforcement, or security investigations or examinations,

---

[*] After concluding that Kouambo was entitled to withholding of removal, the IJ did not reach the question whether he was also entitled to relief under the CAT, "as withholding of removal is a greater benefit which obviates the necessity of evaluating the alternative applications for relief." J.A. 63.

and further proceedings, if necessary, and for the entry of an order as provided by 8 C.F.R. § 1003.47(h)." J.A. 7. Because neither party had appealed the IJ's decision to grant withholding of removal, the BIA expressly declined to address that issue in its opinion. Rather than wait for the IJ to issue an order on remand, Kouambo filed the instant petition for judicial review of the BIA's decision on August 8, 2018.

In the meantime, administrative proceedings continued with respect to Kouambo's case. On October 3, 2018, after reviewing the requisite background checks, the IJ once again found Kouambo removable, entered an order of removal, and granted withholding of removal as to the CAR. Apparently unbeknownst to his counsel in the instant case, Kouambo again appealed the IJ's decision to the BIA on November 2, 2018. That appeal remains pending.

On October 9, 2018, the government moved to dismiss this petition for lack of jurisdiction on the grounds that the BIA's July 9 remand order was not a "final order of removal" subject to judicial review under § 1252(a)(1). Kouambo opposed the motion and asserted that jurisdiction was proper. We deferred action on the government's request and heard oral argument on both the jurisdictional issue and the merits of Kouambo's underlying petition. Because we resolve this case solely on jurisdictional grounds, we express no opinion on the merits of Kouambo's petition.

II.

Congress has vested the courts of appeal with jurisdiction to review only "final order[s] of removal" in immigration proceedings. 8 U.S.C. § 1252(a)(1); *Oliva v. Lynch*, 807 F.3d 53, 57 (4th Cir. 2015). The INA defines an order of removal as "the order of the

5

[IJ] concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A); see also *Khouzam v. Attorney Gen. of U.S.*, 549 F.3d 235, 247 (3d Cir. 2008) (noting that in this context the terms "deportation" and "deportable" are interchangeable with the terms "removal" and "removable"). Such an order becomes final "upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

Even if a removal order is final, we have jurisdiction to review that order only if the alien has exhausted his administrative remedies and the petition for judicial review is filed no more than thirty days after the order was issued. 8 U.S.C. § 1252(b)(1), (d)(1).

Federal courts of appeals determine *de novo* whether they have subject matter jurisdiction to decide a case. *Kporlor v. Holder*, 597 F.3d 222, 225 (4th Cir. 2010). The burden of establishing that jurisdiction is proper "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). When called upon to review removal orders, we remain cognizant that "[j]urisdictional strictures are always important, but nowhere more so than where Congress has set those strictures in an area implicating foreign affairs" such as immigration. *Kporlor*, 597 F.3d at 225 (citing *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 348 (2005)).

III.

A.

We begin with a brief review of the provisions of the INA and accompanying regulations that bear on Kouambo's case.

6

An alien who would otherwise be removable to a given country can apply for withholding of removal as to that country if he demonstrates that it is more likely than not that his "life or freedom would be threatened in that country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999). Unlike asylum, "withholding only bars deporting an alien to a particular country or countries," whereas "a grant of asylum permits an alien to remain in the United States and to apply for permanent residency." *Aguirre-Aguirre*, 526 U.S. at 519. In other words, withholding prevents the government from removing an alien to a specific country of risk, but the alien remains "subject to deportation to a willing third country." *Zuh v. Mukasey*, 547 F.3d 504, 508 (4th Cir. 2008); see also 8 C.F.R. § 1208.16(f).

Importantly, when an IJ grants withholding of removal, "an explicit order of removal must be included in the decision." *Matter of I-S- & C-S-*, 24 I. & N. Dec. 432, 434 (BIA 2008); see also *Luna-Garcia v. Holder*, 777 F.3d 1182, 1183 (10th Cir. 2015). This is so for two reasons. First, as a matter of simple logic, "in order to withhold removal, there must first be an order of removal that can be withheld." *Matter of I-S- & C-S-*, 24 I. & N. Dec. at 433. Second, because an alien protected by an order of withholding may still be removed to a willing third country, the IJ must issue a final order of removal to authorize DHS to effect such a removal if a third country is identified. *Id.* at 434.

Since 2005, both IJs and the BIA have been prohibited from granting withholding of removal unless the subject alien has submitted to a rigorous background check by the DHS. See 8 C.F.R. § 1003.47 (a), (b). Specifically, Department of Justice ("DOJ")

7

regulations provide that "[i]n *no case* shall an [IJ] grant an application for" withholding of removal until DHS background checks have been conducted. 8 C.F.R. § 1003.47(g) (emphasis added). Likewise, when a case is appealed to the BIA, the "Board *shall not issue* a decision affirming or granting" withholding if those checks are incomplete or out of date. 8 C.F.R. § 1003.1(d)(6)(i) (emphasis added).

If the BIA determines that background checks must be completed or updated, the regulations provide for two means by which such investigations may timely be conducted. First, the BIA may retain jurisdiction, place the case on hold, and wait for DHS to complete the requisite checks. 8 C.F.R. § 1003.1(d)(6)(ii)(B). Alternatively, it "may issue an order remanding the case to the [IJ] with instructions to allow DHS to complete or update the appropriate" checks. 8 C.F.R. § 1003.1(d)(6)(ii)(A). If the BIA elects the latter option, on remand the IJ must "consider the results" of the background checks, and "[i]f new information is presented, the [IJ] may hold a further hearing if necessary to consider any legal or factual issues" before entering "an order granting or denying the immigration relief sought." 8 C.F.R. § 1003.47(h).

B.

With the relevant statutory and regulatory provisions in mind, we now turn to the question whether the BIA's July 9 order remanding Kouambo's case to the IJ for background checks is subject to judicial review under § 1252. Kouambo contends that it is. He maintains that the remand order implicitly affirmed the IJ's decision finding him removable and is thus a final order of removal. For the reasons that follow, we disagree.

8

"We begin, as always, with the text of the statute." *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007). As the Ninth Circuit aptly noted when confronted with this question, a "straightforward reading of [the] text indicates that an order of removal cannot become final for any purpose when it depends on the resolution of further issues by the IJ on remand," including the completion and review of background checks. *Abdisalan v. Holder*, 774 F.3d 517, 523 (9th Cir. 2014) (en banc).

For starters, the INA consistently employs the definite article "the" in referring to "the order" of removal. See, *e.g.*, 8 U.S.C. §§ 1101(a)(47)(A), (B); 1252(b)(1). This suggests that Congress "contemplated that an alien's removal proceedings would typically culminate in *one* final order of removal." *Abdisalan*, 774 F.3d at 523 (emphasis added); cf. *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (noting that the "consistent use of the definite article in reference" to an object "indicates" that the statute refers to only one such object).

To hold otherwise would require us to resolve these cases in fits and starts. For proof, we need look no further than the petition at issue here. Kouambo has appealed the IJ's October 3, 2018 decision on remand to the BIA. That order is substantively identical to the IJ's July 17, 2017 decision that underpins the BIA order Kouambo has asked us to review. If we were to conclude that *both* the BIA's order and the IJ's order on remand constituted final orders of removal, it would result in this court and the BIA simultaneously considering substantially the same issues. Alternatively, as will be discussed further below, on remand the IJ could have reversed its earlier decision and denied Kouambo's request for withholding of removal. Presumably, Kouambo would have appealed that decision to

the BIA, and, if he did not receive a favorable outcome, petitioned this court for review. Such a course would likely have resulted in our considering Kouambo's entitlement to asylum, the issue presented by the instant petition, separately from his entitlement to withholding of removal.

Nothing in the INA suggests that Congress intended to create such a sporadic, disjointed system of review. On the contrary, "[b]ifurcation of judicial review of deportation proceedings is not only inconvenient; it is clearly undesirable." *Foti v. INS*, 375 U.S. 217, 232 (1963). Thus, considerations of judicial efficiency and comprehensive disposition of immigration claims confirm what the text of the INA suggests—that typically there will be only one final order of removal in a given case. *Abdisalan*, 774 F.3d at 526; see also *Ponce-Osorio v. Johnson*, 824 F.3d 502, 505 (5th Cir. 2016). Finding subject matter jurisdiction here would necessarily require us to hold that the BIA's remand order constitutes the sole final order of removal in Kouambo's case.

But the INA's use of the term "final" counsels against concluding that an order of removal can be subject to judicial review prior to the conclusion of all substantive proceedings on remand. *Abdisalan*, 774 F.3d at 524. Generally, a "final" order is one "ending a court action or proceeding leaving nothing further to be determined by the court or to be done except the administrative execution of the court's finding." *Id.* (quoting Webster's Third New Int'l Dictionary 851 (2002)). Similarly, in the context of administrative proceedings the Supreme Court has found agency action to be "final" where it "mark[s] the consummation of the agency's decisionmaking process," and is "one by which rights or obligations have been determined, or from which legal consequences will

10

flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted).

The BIA's July 9 remand order does not align with either of the foregoing definitions of finality. As previously noted, DOJ regulations precluded the BIA from affirming the IJ's grant of withholding of removal until the requisite background investigations were completed. 8 C.F.R. § 1003.1(d)(6)(i); see also *In re Alcantara-Perez*, 23 I. & N. Dec. 882, 883 (BIA 2006) ("[I]f the appropriate background checks have not been conducted in a case pending before the Board, we are not able to issue a final decision granting any application for relief that is subject to the provisions of § 1003.47") (internal quotation marks omitted); *Ponce-Osorio*, 824 F.3d at 506. As a result, despite the IJ's earlier finding, the issue whether Kouambo was entitled to withholding of removal—and thus whether he could be removed to the CAR—remained unresolved when his case was remanded.

And the proceedings on remand were by no means trivial or merely perfunctory. On the contrary, as the Attorney General noted when issuing the background check regulations, "[t]he significance of completing law enforcement checks prior to the granting of applications for relief from removal . . . cannot be overestimated." Background and Security Investigations in Proceedings before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743, 4751 (January 31, 2005). It is a national security imperative that our nation's immigration officers be equipped to "prevent the very few people who may pose overwhelming risks from entering or remaining in the United States

11

undetected." *Id.* at 4743 (quoting The 9/11 Commission Report 383 (2004)). Mandatory background checks are one essential tool in that effort.

Given that, when a case is remanded for background checks, the IJ is affirmatively required to consider any new evidence revealed by those investigations that could affect the alien's entitlement to relief. *Ponce-Osorio*, 824 F.3d at 506; *In re M-D-*, 24 I. & N. Dec. 138, 141 (BIA 2007); 8 C.F.R. § 1003.47(h). Almost all forms of relief from removal, including withholding, require applicants to establish that they have not been convicted of certain crimes, do not pose a national security threat, and are not otherwise inadmissible. Background and Security Investigations, 70 Fed. Reg. at 4743; see also 8 U.S.C. § 1231(b)(3)(B). Thus, if an applicant's background checks reveal compromising information, that can affect his eligibility for relief. This would be true even if he otherwise met the requirements for withholding. See 8 U.S.C. § 1231(b)(3)(B). So if an applicant's background check revealed, for example, that he was a member of a terrorist organization, an IJ would be required to reverse his original decision and deny withholding of removal on remand. *Id.*; see also *Yusupov v. Attorney General of U.S.*, 518 F.3d 185, 196 n.19 (3d Cir. 2008).

Such cases are not mere hypotheticals. Indeed, DHS reports that the background checks at issue here have uncovered applicants for removal relief who were, *inter alia*, "(1) Attempting to procure missile technology for a foreign government with terrorist ties; (2) previously deported for attempted drug smuggling; (3) serving as an executive officer of a designated foreign terrorist organization; [and] (4) subject to outstanding warrants for rape and other aggravated felonies." Background and Security Investigations, 70 Fed. Reg. at

12

4751. It strains credulity to believe that Congress intended for immigration proceedings to be considered final before such crucial information was uncovered and its import assessed.

What's more, the scope of the IJ's authority on remand is not limited to considering the results of an applicant's background checks. Rather, in remanding Kouambo's case, the BIA relinquished jurisdiction over the entirety of the proceedings in favor of the IJ. See *Johnson v. Ashcroft*, 286 F.3d 696, 701-03 (3d Cir. 2002); *In re M-D-*, 24 I. & N. Dec. at 141. Though the IJ was not empowered to reconsider a prior decision of the BIA, it could nevertheless "consider additional evidence if it is material, was not previously available, and could not have been discovered or presented at the former hearing." *In re M-D-*, 24 I. & N. Dec. at 141 (citing *Matter of Coelho*, 20 I. & N. Dec. 464 (BIA 1992)). And if that new evidence would support a motion to reopen the proceedings, the IJ could "consider it, whether 'reopening' an issue previously decided or considering additional forms of relief." *Id.* at 142. This suggests that if, for example, Kouambo came forward with material new evidence rebutting the IJ's conclusion that he had firmly resettled in the ROC, the IJ could have reopened his asylum claim and even granted him asylum.

At bottom, in no sense did the BIA's remand order "mark the consummation of the agency's decisionmaking process" with respect to Kouambo's case. *Bennett*, 520 U.S. at 178 (internal quotation marks omitted). On the contrary, the question of whether Kouambo was eligible for withholding of removal had yet to be answered and remained entirely contingent on the results of his background checks. And the IJ retained authority on remand to reconsider any other issues presented by the case and grant appropriate relief.

13

In short, Kouambo's case remained open. To hold that the BIA's order was final in this context would stretch the meaning of finality beyond its natural reading.

Indeed, the BIA itself appears to have recognized as much. See *In re M-D-*, 24 I. & N. Dec. at 141 (noting that "no final order exists" when the BIA remands a case for background checks). Instead of the BIA order, it is the IJ's October 3 decision on remand that, if affirmed by the BIA, would become the sole final order of removal in this case. *In re Alcantara-Perez*, 23 I. & N. Dec. at 884-85 (clarifying that when the IJ issues an order granting relief after a case has been remanded for background checks, "[t]hat order then becomes the final administrative order in the case."); see also *Abdisalan*, 774 F.3d at 525; *Vakker v. Attorney General of U.S.*, 519 F.3d 143, 147 (3d Cir. 2008).

Finally, beyond its inconsistency with the text, Kouambo's interpretation of final order is incompatible with the overall statutory scheme governing judicial review of immigration claims. A "petition for review must be filed not later than 30 days after the date of the final order of removal," 8 U.S.C. § 1252(b)(1), and this time limit is "mandatory and jurisdictional," *Stone v. INS*, 514 U.S. 386, 405 (1995). But if the BIA's decision to remand was the final order of removal here, then the statutory clock started running from the date of that order, July 9, 2018. Thus, if Kouambo's background check had revealed negative information and the IJ had denied withholding of removal, Kouambo would have been statutorily barred from seeking judicial review of that decision, as the thirty-day deadline would have passed. See *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012). We are not prepared to assume that Congress intended to deprive aliens of judicial review

14

in such situations, especially when the contrary reading finds greater support in the statutory text. *Id.*; see also *INS v. St. Cyr*, 533 U.S. 289, 300 (2001).

In light of the foregoing, we hold that when the BIA remands a case to the IJ for background checks, its decision is not a final order of removal for purposes of judicial review. We thus join the majority of our sister circuits which have reached the same conclusion in matching circumstances. See *Ponce-Osorio v. Johnson*, 824 F.3d 502, 507 (5th Cir. 2016); *Abdisalan v. Holder*, 774 F.3d 517, 526 (9th Cir. 2014) (en banc); *Goromou v. Holder*, 721 F.3d 569, 576 n.6 (8th Cir. 2013); *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009); *Vakker v. Attorney Gen. of U.S.*, 519 F.3d 143, 147-48 (3d Cir. 2008); but see *Viracacha v. Mukasey*, 518 F.3d 511 (7th Cir. 2008).

IV.

Because the BIA remanded his case to the IJ for background checks, the BIA order underlying Kouambo's petition for judicial review is not a final order of removal. As such, we lack jurisdiction to consider the petition under 8 U.S.C. § 1252. The government's motion to dismiss is granted, and Kouambo's petition is dismissed for lack of jurisdiction.

DISMISSED

15