**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-2297**

_____

FRANK HARMON BLACK; SOUTHEAST INVESTMENTS, N.C., INC.

Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION,

Respondent,

FINANCIAL INDUSTRY REGULATORY AUTHORITY,

Intervenor.

------------------------------

NEW CIVIL LIBERTIES ALLIANCE,

Amicus Supporting Petitioners.

_____

On Petition for Review of the Decision and Order of the Securities and Exchange Commission.  (SEC-1:3-19185)

_____

Argued:  December 10, 2024                           Decided:  January 14, 2025

_____

Before KING, WYNN, and THACKER, Circuit Judges.

_____

Petition for review dismissed by published opinion.  Judge King wrote the opinion, in which Judge Wynn and Judge Thacker joined.

**ARGUED:** Aditya Dynar, PACIFIC LEGAL FOUNDATION, Arlington, Virginia, for Petitioners.  Courtney Lynn Dixon, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  Amir C. Tayrani, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Intervenor. **ON BRIEF:** Adam F. Griffin, PACIFIC LEGAL FOUNDATION, Arlington, Virginia, for Petitioners.  Brian M. Boynton, Principal Deputy Assistant Attorney General, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Megan Barbero, General Counsel, Michael A. Conley, Solicitor, Daniel Staroselsky, Assistant General Counsel, Rachel M. McKenzie, Senior Appellate Counsel, Archith Ramkumar, Appellate Counsel, UNITED STATES SECURITIES & EXCHANGE COMMISSION, Washington, D.C., for Respondent.  Alex Gesch, Max E. Schulman, Amalia Reiss, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Intervenor.  Andrew J. Morris, Russell G. Ryan, NEW CIVIL LIBERTIES ALLIANCE, Washington, D.C., for Amicus Curiae.

KING, Circuit Judge:

Petitioners Frank Harmon Black and his securities investment firm, Southeast Investments, N.C., Inc., are the respondents in an ongoing disciplinary proceeding pending before the Financial Industry Regulatory Authority, Inc. ("FINRA"). FINRA commenced those disciplinary proceedings in September 2015 because of Black and Southeast's alleged failure to establish and maintain an adequate broker supervisory system, their alleged failure to preserve business-related electronic correspondence, and their alleged submission of false documents and testimony to FINRA examiners, in violation of FINRA rules and the federal securities laws. In March 2017, FINRA decided that Black and Southeast's conduct had contravened the FINRA rules. Black and Southeast appealed FINRA's resulting disciplinary decision to the Securities and Exchange Commission (the "SEC"), pursuant to the Securities Exchange Act (the "Exchange Act"). On December 7, 2023, in resolving that appeal, the SEC affirmed in part and remanded in part FINRA's disciplinary decision against Black and Southeast. *See Se. Invs., N.C., Inc.*, Exchange Act Release No. 99118, 2023 WL 8527162 (Dec. 7, 2023) (the "SEC Decision"). Black and Southeast have now petitioned this Court for review of the SEC Decision.

Before addressing and resolving the merits of this petition for review, we are obliged to examine and decide whether we possess jurisdiction to do so. As explained herein, the SEC Decision is not a final order, and we therefore lack jurisdiction to resolve the issues pursued by the petitioners. We thus dismiss the petition of Black and Southeast for review of the SEC Decision.

3

I.

A.

Southeast is a securities brokerage firm headquartered in Charlotte, North Carolina. Southeast's registered representatives provide financial management and retail securities services to clients from their satellite offices across the United States. From 2010 to 2015, Black served as Southeast's President, as its Chief Executive Officer, and as its Chief Financial Officer. In those capacities, Black was responsible for overseeing the operations of Southeast, including its satellite offices, and for ensuring that Southeast's registered representatives complied with applicable federal securities laws and the regulations implementing those laws.

The federal securities laws — principally the Exchange Act of 1934, as amended by the Maloney Act of 1938 — have maintained "a system of cooperative self-regulation through voluntary associations of brokers and dealers" to supplement the SEC's regulation of the securities industry. *See United States v. Nat'l Ass'n of Sec. Dealers*, 422 U.S. 694, 700 n.6 (1975); *see also* 15 U.S.C. § 78o-3. Pursuant to this statutory framework, brokers and dealers in the securities industry must join a national securities association — that is, FINRA — which itself is subject to comprehensive oversight by the SEC. *Id.* § 78o(a)(1), (b)(1); *id.* § 78s. Such associations are mandated to self-regulate the securities and financial industries of the United States by disciplining members that violate an association's rules or the federal securities laws.

Southeast has been a member of FINRA — presently the only registered national securities association in the United States — since the firm's formation in 1997. FINRA

4

is itself a private organization, comprised of financial brokers and dealers in the United States, which promulgates rules to enforce its members' compliance with the applicable federal securities laws and regulations. *See* 15 U.S.C. § 78o-3(b)(2). Consistent with this obligation, FINRA can initiate disciplinary proceedings when it believes a FINRA member has violated any association rule, federal regulation, or provision of the federal securities laws. *Id.* § 78o-3(h)(1). Those disciplinary proceedings provide procedural protections by way of (1) an evidentiary hearing before a three-member panel at which respondents have the right to introduce evidence and testimony; (2) an appeal to FINRA's National Adjudicatory Council (the "NAC"); and (3) another appeal to the SEC, which reviews all FINRA disciplinary decisions de novo. *Id.* § 78s(d)(2), (e)(2).

FINRA is required to notify the SEC of "any final disciplinary sanction" taken against a member upon the conclusion of a FINRA disciplinary proceeding. *See* 15 U.S.C. § 78s(d)(1).[1] The SEC may then conduct a de novo review of FINRA's disciplinary decision, either at the request of the aggrieved member or "on its own motion." *Id.* § 78s(d)(2). In this appellate review, the SEC independently determines whether the aggrieved member engaged in the conduct that served as the basis for the FINRA disciplinary sanction, whether that conduct violated the relevant rules, and whether an application of those rules to the aggrieved member is consistent with the purposes of the

---

[1] Pursuant to § 78s(d)(1) of Title 15, "any self-regulatory organization [that] imposes any final disciplinary sanction on any member thereof or participant therein . . . shall promptly file notice thereof with the appropriate regulatory agency for the self-regulatory organization."

5

Exchange Act. *Id.* § 78s(e)(1). The SEC can then either "affirm," "modify," or "set aside" the self-regulatory organization's disciplinary sanctions. *Id.* Of importance here, the Exchange Act, as codified in Title 15, also provides that a person aggrieved by an SEC "final order" may seek judicial review in the appropriate Court of Appeals of the United States. *Id.* § 78y(a)(1).[2]

## B.

Between 2010 and 2015, SEC inspections and FINRA examinations of Southeast discovered that Southeast had failed to establish and maintain adequate processes to supervise its financial professionals and preserve business-related electronic correspondence, as required by FINRA rules and the Exchange Act. One such examination uncovered that Black had failed to conduct required inspections of Southeast's satellite offices, and that he had then tried to cover up this failure by submitting false documents and testimony to FINRA examiners. In September 2015, FINRA's Department of Enforcement thus commenced disciplinary proceedings against Southeast, and Black personally, by filing a disciplinary complaint alleging that their conduct had violated FINRA rules, the Exchange Act, and SEC regulations.

## 1.

In September 2016, a three-member FINRA hearing panel conducted a four-day evidentiary hearing concerning the disciplinary complaint against Black and Southeast,

---

[2] Pursuant to § 78y(a)(1) of Title 15, "[a] person aggrieved by a final order of the Commission . . . may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business."

6

where ten witnesses — including Black — presented testimony relating to Black and Southeast's alleged violations. In March 2017, the FINRA hearing panel issued its decision, ruling that Black and Southeast had engaged in the conduct alleged in FINRA's disciplinary complaint. That is, Black and Southeast (1) failed to establish and maintain a supervisory system and failed to establish, maintain, and enforce written supervisory procedures that were reasonably designed to preserve business-related electronic correspondence, as required by FINRA rules; (2) failed to preserve 16 emails in the firm's records, as required by federal securities laws and FINRA rules; and (3) submitted false testimony and fabricated documents to the FINRA hearing panel regarding Black's purported inspections of certain Southeast offices from 2010 to 2012. Based on those rulings and those violations, the FINRA hearing panel imposed substantial fines on Black and Southeast, and it barred Black from associating with other FINRA member firms.[3]

### 2.

As they were entitled to do, Black and Southeast appealed FINRA's disciplinary decision to the NAC. During briefing and oral argument before the NAC, Black and Southeast objected to FINRA's failure to produce certain investigatory notes made by a FINRA examiner, from which the allegations of false documents and testimony had arisen.

---

[3] For the supervisory violations, the FINRA hearing panel imposed a $120,000 fine jointly and severally against Black and Southeast. The hearing panel also imposed a $50,000 fine against them, again on a joint-and-several basis, for their failure to retain 16 business-related emails. For providing false testimony and fabricated documents the hearing panel imposed a $73,000 fine against Southeast, in addition to barring Black from associating with any FINRA member.

Unable to locate those investigatory notes, FINRA instead produced contemporaneous emails and memoranda that summarized the notes. By an order of June 26, 2018 (the "Interim NAC Order"), the NAC ruled that FINRA's failure to produce the FINRA examiner's investigatory notes was a harmless error. The Interim NAC Order, issued by a NAC subcommittee tasked with reviewing Black and Southeast's evidentiary objections, instructed the FINRA hearing panel to conduct further proceedings regarding whether the FINRA examiner should have produced the investigatory notes before the hearing and, if so, whether the failure to do so was a harmless error. After reconsideration, the FINRA hearing panel concluded that the FINRA examiner's failure to produce those notes was a harmless error.

By its final decision of May 23, 2019 (the "NAC Decision"), the NAC affirmed the FINRA hearing panel's ruling on the false testimony and fabricated document violations, ruling that the fine imposed against Southeast and the associational bar against Black were appropriate sanctions for those violations. The NAC Decision also upheld the FINRA hearing panel's findings that Black and Southeast had committed the supervisory and record retention violations, but reduced the fines imposed for those violations.[4]

---

[4] The NAC Decision significantly reduced the fines for the supervisory and record retention violations. For the supervisory failures, it reduced the fine from $120,000 to $73,000. For the failure to retain business-related emails, the NAC Decision reduced the fine from $50,000 to $500, due to the small number of emails at issue.

8

3.

On May 28, 2019, Black and Southeast petitioned the SEC for review of the NAC Decision. After conducting an independent review of the record, the SEC issued the decision at issue herein — the SEC Decision of December 7, 2023 — which affirmed the NAC Decision in part and remanded in part for further proceedings before FINRA. More specifically, the SEC Decision affirmed the FINRA hearing panel and the NAC Decision's rulings regarding Black and Southeast's supervisory and record retention violations.

With respect to the false testimony and fabricated documents violations, however, the SEC Decision determined that FINRA's failure to produce its investigatory emails was not a harmless error. It explained that, under the circumstances, Black could be entitled to additional development of the evidence, or an adverse inference against FINRA's enforcement staff. The SEC Decision thus remanded the false testimony and fabricated documents issues to FINRA for further proceedings.

On December 19, 2023 — only 12 days after the SEC Decision, and six weeks after Black and Southeast initiated a lawsuit in the Western District of North Carolina — Black and Southeast petitioned this Court for review of the SEC Decision.[5]

_____

[5] On October 30, 2023 — while Black and Southeast's appeal was pending before the SEC — they filed a lawsuit against FINRA and the SEC in the Western District of North Carolina. *See Black v. Fin. Indus. Reg. Auth.*, No. 3:23-cv-00709 (W.D.N.C. Oct. 30, 2023), ECF No. 1. In their district court complaint, Black and Southeast raised constitutional challenges to FINRA's adjudicatory process that are similar to the unpreserved constitutional issues pursued in this petition for review. After the SEC Decision was issued on December 7, 2023, the parties jointly moved in the district court for a stay of all proceedings in light of their pending petition for review before this Court. (Continued)

9

II.

We have consistently recognized that "Article III courts are 'courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *See Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 844 F.3d 414, 419 (4th Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). In keeping with this settled precedent, we have recognized that a "bedrock principle of appellate court jurisdiction is that . . . parties may only appeal final orders" of administrative agencies. *See Carolina Power & Light Co. v. U.S. Dep't of Labor*, 43 F.3d 912, 918 (4th Cir. 1995).

Under federal law, the various United States Courts of Appeals possess jurisdiction to review "final order[s]" of the SEC. *See* 15 U.S.C. § 78y(a)(1). Although the statute does not define the term "final order," our Court has recognized that a "final order" as used therein is synonymous to the term "final agency action." *See, e.g.*, *Bennett v. SEC*, 844 F.3d 174, 183 (4th Cir. 2016) ("[T]he judicial-review provision in § 78y encompasses all objections to a final agency action."). "[T]wo conditions must be satisfied for agency action to be 'final.'" *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). A final order "must mark the 'consummation' of the agency's decisionmaking process," and it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (internal quotation marks omitted). Put otherwise, a final

---

That motion was granted, and the related proceedings in the Western District of North Carolina are thus stayed.

order "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *See Catlin v. United States*, 324 U.S. 229, 233 (1945). Against this backdrop, our Court has routinely concluded that we lack jurisdiction to review an agency order remanding a case, or a portion thereof, to a lower tribunal for further proceedings. *See, e.g.*, *Kouambo v. Barr*, 943 F.3d 205, 211-12 (4th Cir. 2019); *Eggers v. Clinchfield Coal Co.*, 11 F.3d 35, 38 (4th Cir. 1993); *Newport News Shipbuilding & Dry Dock Co. v. Dir., Off. of Workers' Comp. Programs*, 590 F.2d 1267, 1269 (4th Cir. 1978).

Contrary to this settled precedent, the SEC contends that the SEC Decision's partial remand "does not render the [SEC Decision] unreviewable, because the issues for which the Commission issued sanctions" — that is, the supervisory and email retention violations — "may be considered a final order on their own." *See* SEC Br. 34. In advancing its contention concerning appellate jurisdiction, the SEC urges us to adhere to a Ninth Circuit decision called *Saliba v. SEC*. *See* 47 F.4th 961, 968 (9th Cir. 2022). The *Saliba* court exercised final order jurisdiction over part of an SEC decision that included a partial remand order. *Id.* at 966. Unlike here, however, the reviewable portion of the SEC decision had imposed an immediately effective bar from FINRA membership, which the court "analogized to an injunction" subject to "interlocutory appeal" under 28 U.S.C. § 1292. *Id.* at 968 n.1. In contrast, the sanctions imposed against Black and

11

Southeast for the supervisory and email retention violations were not immediately effective, and they do not in any way resemble an injunction.[6]

The SEC thus argues that we actually possess some type of piecemeal jurisdiction to review this allegedly "final" portion of the SEC Decision.[7] But that proposition is incorrect, because "when Congress requires finality" — as it does in § 78y(a)(1) of Title 15 — "we must ensure that 'every matter in the controversy . . . [is] decided in a single appeal.'" *See Kiviti v. Bhatt*, 80 F.4th 520, 530 (4th Cir. 2023) (quoting *Microsoft Corp. v. Baker*, 582 U.S. 23, 36 (2017)). In such circumstances, we have recognized that "[i]t is not the place of appellate courts to scrutinize agency action at every step of an administrative proceeding," but rather to "proceed cautiously, allowing lower decision-makers thoroughly to resolve the intricacies of underlying claims." *See Carolina Power*, 43 F.3d at 918.

The SEC Decision does not "end [this] litigation," and it does not "mark the consummation of the agency's decisionmaking process." *See Catlin*, 324 U.S. at 233; *Bennett*, 520 U.S. at 177-78. Indeed, "it does the exact opposite by remanding the case" to

---

[6] As explained herein, the SEC Decision did not impose any immediate consequences on Black and Southeast. As a result, we need not reach or resolve the question of whether we could review a partial remand order that imposed immediate legal consequences. That question is for another day.

[7] The SEC's position in these proceedings is inconsistent with and contrary to that of FINRA. FINRA — an intervening party represented by its own counsel — contends that the SEC Decision is not a final order, as required by 15 U.S.C. § 78y(a)(1), because it did not "resolve all issues," and thus did not "conclusively resolve the whole case." *See* FINRA Br. 15. As explained herein, we are satisfied to agree with FINRA's position on the jurisdictional issue, and we appreciate their assistance.

FINRA, specifically "for further proceedings," to include further record development through cross-examination and witness testimony. *See Carolina Power*, 43 F.3d at 915. Black and Southeast will thus be entitled to challenge FINRA's decision in such further proceedings — along with the sanctions for the supervisory and record retention violations — by an appeal to the SEC and then, if necessary, to this Court. And, as discussed earlier, the SEC Decision does not impose any "obligations" or "legal consequences" upon Black or Southeast that are cognizable before this Court. *See Bennett*, 520 U.S. at 178.

Unlike the order at issue in *Saliba*, the SEC Decision actually set aside FINRA's findings of violations and sanctions imposed against Black and Southeast "for testifying falsely and producing to FINRA fabricated documents." *See* SEC Decision 16; Order, Exchange Act Release No. 99118; *cf. Saliba*, 47 F.4th at 968. All fines and sanctions imposed by FINRA have been stayed pending completion of the proceedings remanded to FINRA, subsequent administrative appeal proceedings, and further judicial review. *See* FINRA Rule 9370(a) (providing that an application for SEC review "shall stay the effectiveness of any sanction, other than a bar or an expulsion"). Put simply, Black and Southeast must await the conclusion of the remand proceedings to FINRA, and only then — if they are ultimately "aggrieved" by the SEC's "final order" resolving the entire case — will they be entitled to petition for review by this Court. *See* 15 U.S.C. § 78 y(a)(1).

In sum, the SEC Decision satisfies neither the plain text of § 78y(a)(1) of Title 15, nor the "two conditions" required for an agency action to be final. *See Bennett*, 520 U.S. at 177-78. The SEC Decision is not a final order that is reviewable in this Court, and we

13

therefore lack jurisdiction to consider the petition for review submitted by Black and Southeast.

## III.

Pursuant to the foregoing, we dismiss Black and Southeast's petition for review of the SEC Decision for lack of final order jurisdiction.

*PETITION FOR REVIEW DISMISSED*